## TOLL GATE FARMS, INC. *v.* MILK REGULATION BOARD OF THE STATE OF CONNECTICUT

BALDWIN, C. J., KING, MURPHY, MELLITZ and BORDON, Js.

Argued March 9—decided May 2, 1961

*Harry L. Nair,* with whom was *Henry J. Gwiazda,* for the appellant (plaintiff).

*Michael J. Scanlon,* assistant attorney general, with whom, on the brief, was *Albert L. Coles,* attorney general, for the appellee (defendant).

BALDWIN, C. J.  The plaintiff appealed to the Superior Court from the denial of its application to the defendant for the approval of a cap and label for use in the sale of skimmed milk. The court dismissed the appeal, and the plaintiff has appealed to this court.

The finding, with certain corrections claimed by the plaintiff, can be stated in summary as follows: The plaintiff, a duly licensed distributor of milk and milk products, proposed to sell skimmed milk containing 2 per cent butterfat.  On September 24, 1959, pursuant to General Statutes § 22-135, it applied to the defendant for the approval of a cap and label which it intended to use in the sale of this product.  The plaintiff requested that a meeting of the defendant be called if it was necessary for evidence to be offered to secure the approval.  The defendant denied the application and gave as its reason that the statutes as well as its regulations made no provision for the sale of skimmed milk containing 2 per cent butterfat.

The parties agree that the issue dispositive of the appeal is whether a duly licensed dealer in, or producer of, milk or milk products can sell, or offer or possess with intent to sell, milk from which sufficient cream has been removed to reduce its butterfat content to less than three and one-quarter per cent but more than one-half of one per cent. General Statutes § 22-127 defines "skimmed milk"

or "non-fat milk" as "milk from which a sufficient portion of the butter-fat has been removed to reduce its butter-fat percentage to one-half of one per cent or less." General Statutes § 22-152 provides that milk sold or offered for sale shall be deemed to be milk of standard quality unless it is otherwise expressly stated, and requires that milk, to meet the test of standard quality, "shall contain [among other characteristics of quality not pertinent here] . . . not less than three and one-quarter per cent of butter-fats." "Milk-fat" or "butter-fat" is, as used in the statutes, the fat of milk. § 22-127. Section 22-159, entitled "Skimmed milk," prohibits the sale, or possession with intent to mix with other dairy products to be sold, of milk from which the cream or any part thereof has been removed, unless the product is plainly labeled, and allows the sale of "skimmed milk" in milk bottles or other approved containers if they are properly marked or tagged as skimmed milk. Section 22-135 requires a dealer to obtain approval from the defendant of the cap or labeling panel to be used by him in the sale or distribution of all of his milk products or of each milk product requiring a separate cap or label.

The defendant has interpreted the statutes to mean that the sale of milk having a butterfat content of less than three and one-quarter per cent (the standard required for a sale of milk as such under § 22-152) but more than one-half of one per cent (the percentage appearing in the definition of skimmed milk in § 22-127) is prohibited even if the product is properly labeled. The plaintiff contends that such milk can be sold if it is properly labeled. To decide between these conflicting claims, the court is called upon to determine the intent of the legisla-

tion. Legislative intent is to be found, not in what the legislature meant to say, but in the meaning of what it did say. *Connecticut Chiropody Society, Inc.* v. *Murray,* 146 Conn. 613, 617, 153 A.2d 412; *Lee* v. *Lee,* 145 Conn. 355, 358, 143 A.2d 154; *Mad River Co.* v. *Wolcott,* 137 Conn. 680, 686, 81 A.2d 119. If the language of legislation is plain, the intent can be ascertained from the legislation itself. If the language is not plain, courts look not only to the wording of the legislation but also to its legislative history and policy. *Lee* v. *Lee,* supra; *Wilson* v. *Miller,* 144 Conn. 212, 214, 128 A.2d 894, and cases cited.

Prior to 1957, skimmed milk was defined as "milk from which a sufficient portion of the milk-fat has been removed to reduce its milk-fat percentage to less than that of milk." Cum. Sup. 1955, § 1731d; Rev. 1949, § 3175. This definition had its origin in § 668i of the 1947 Supplement. Before 1947, "skimmed milk" had been described only in the predecessors of § 22-159, that is, as milk from which the cream or any part thereof has been removed. Sup. 1941, § 427f; Rev. 1930, § 2467; Public Acts 1921, c. 154; Rev. 1918, § 2467; Rev. 1902, § 2587; Rev. 1888, § 2660; Public Acts 1882, c. 145, § 3. By these statutes, the sale of skimmed milk was prohibited, as it is under § 22-159, except under certain procedures designed to make the public aware that skimmed milk was being sold.

In 1957, the General Assembly, after the definitions statute (then § 1731d, now § 22-127) had been amended in another respect (Public Acts 1957, No. 359, § 1), redefined "skimmed milk," or "non-fat milk," as "milk from which a sufficient portion of the milk-fat has been removed to reduce its milk-fat percentage to one-half of 1% or less." Public

Acts 1957, No. 419; General Statutes § 22-127. The defendant points to the legislative history of this 1957 amendment to support its interpretation of the statutes. The legislation was inaugurated by house bill 2215, which proposed to amend the section to define "skimmed milk" as "milk from which a sufficient portion of milk-fat has been removed to reduce its milk-fat percentage to one-half of one per-centum or less." This bill also contained a definition of "non-fat milk" as "milk from which a sufficient portion of the milk-fat content has been removed to reduce the milk-fat content to one-half of one percentum or less and to which milk solids have been added from sources approved by the commissioner, provided the total milk solids in this product shall not exceed 12%." The bill stated its purpose to be "[t]o delete the definition of fresh milk and to define 'non-fat' milk, a term commonly used throughout the industry, and to define 'skimmed milk.'" When the bill was reported to the house from the committee on agriculture and printed for action, it had been altered to include a provision that "[m]ilk which contains less than 3.25% but more than one-half of 1% of milk fat shall be called 'low fat milk.'" Sub. for H.B. 2215, 1957 Sess. (File No. 1089). The bill allowed the sale of such milk if it was labeled "low fat milk" and the minimum fat content was revealed clearly and prominently on the label of the container. The bill defined "skimmed milk" or "non-fat milk" as "milk from which a sufficient portion of the milk-fat has been removed to reduce its milk-fat percentage to one-half of 1% or less,"—the definition presently found in § 22-127.

When the bill came up for action in the house, an amendment was proposed which deleted the defini-

tion of "low fat milk" and the provision for its sale. 7 H.R. Proc., Pt. 5, 1957 Sess., p. 2533. It was stated that the amendment "eliminates a particular type of milk which would be called low-fat milk." The amendment prevailed. Ibid. Under the rules of the house, the bill as amended was referred to the legislative commissioner. When the bill came before the house for final action, it was stated on the floor that, as amended, the bill defined more clearly the term "skimmed milk" and established butterfat gradations for that product. Id., p. 2536. The bill was adopted. Id., p. 2537; Conn. H. Jour., 1957 Sess., p. 1375. It was then considered and adopted in the senate. Conn. S. Jour., 1957 Sess., p. 1260. There, the senator who moved the adoption stated that the amendment deleted from the bill any provision which would allow milk with less than three and one-quarter per cent butterfat to be sold. 7 S. Proc., Pt. 5, 1957 Sess., p. 2858. The bill contained a provision defining "[f]ortified skimmed milk" or "fortified non-fat milk" as "milk from which a sufficient portion of the milk-fat content has been removed to reduce the milk-fat content to one-half of 1% or less" and to which approved milk solids had been added. 1957 Public Acts, No. 419; General Statutes § 22-127.

The 1957 legislation made a drastic change in the definition of "skimmed milk." It, in effect, eliminated from that category, and left undefined, milk with less than three and one-quarter per cent butterfat but more than one-half of one per cent butterfat. The plaintiff claims that § 22-127 deals with definitions only and that its terms are not regulatory or prohibitory. That is true. We must look to § 22-159 for prohibitory or regulatory measures dealing with the sale of skimmed milk. That stat-

ute, hereinbefore referred to, bears the heading "Skimmed milk" and reads as follows: "No person shall sell, or offer or expose for sale, or have in his possession with the intent to mix with other dairy products to be sold, milk from which the cream or any part thereof has been removed, unless the product is plainly labeled. Skimmed milk may be sold in milk bottles or other approved containers if properly marked or tagged as such skimmed milk." The section must be read together with the definition of "skimmed milk" in § 22-127. The first sentence of § 22-159 deals with "milk from which the cream or any part thereof has been removed." The second allows the sale of "skimmed milk" if it is properly identified.

There is a possible conflict between the assumed description of skimmed milk in the first sentence of § 22-159 and the definition in § 22-127. When two statutes appear to be repugnant, it is the duty of the court to construe them so that both are operative, if that is reasonably possible. *Danbury Rubber Co.* v. *Local 402,* 145 Conn. 53, 57, 138 A.2d 783; *Shanley* v. *Jankura,* 144 Conn. 694, 702, 137 A.2d 536; 1 Sutherland, Statutory Construction (3d Ed.) § 2014. Further, the court must presume that the legislature, in adopting the 1957 legislation, acted with existing relevant statutes in mind and with the intention of creating a consistent body of law. *Shanley* v. *Jankura,* supra, 704; *Norwalk* v. *Daniele,* 143 Conn. 85, 87, 119 A.2d 732; *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 665, 103 A.2d 535. Courts are bound to accept the legislative definition of terms in a statute. *United Interchange, Inc.* v. *Spellacy,* 144 Conn. 647, 654, 136 A.2d 801; *Danbury* v. *Corbett,* 139 Conn. 379, 384, 94 A.2d 6. Therefore, "skimmed milk," as that term

is used in § 22-159, must mean milk with one-half of one per cent of butterfat or less. The apparent conflict between § 22-159 and § 22-127 is resolved if the two sentences of § 22-159 are treated, as they should be, as dealing with different categories. The first sentence deals with the general category of milk "from which the cream or any part thereof has been removed"; the second sentence deals with the more specific category of "skimmed milk" as that term is defined in § 22-127.

We conclude that § 22-159 prohibits the sale of skimmed milk as defined in § 22-127 except under the conditions stated in §§ 22-159 and 22-135. It does not prohibit the sale of milk with less than three and one-quarter per cent butterfat but more than one-half of one per cent butterfat, and an intent to prohibit such sale cannot be inferred from the mere fact that milk with that butterfat content is not included within the definition of skimmed milk in § 22-127. It may well be that the statements of the legislators who moved the adoption of Public Acts 1957, No. 419, defining "skimmed milk" as it is now defined in § 22-127, and the action of the legislature in adopting No. 419 show that it was intended to outlaw the sale of milk with a butterfat content of less than three and one-quarter per cent but more than one-half of one per cent by leaving such milk undefined. However, intent, as a state of mind of the members of a legislative body, is not conclusive, even where it can be ascertained. *Park Regional Corporation* v. *Town Plan & Zoning Commission,* 144 Conn. 677, 682, 136 A.2d 785; *Fox* v. *Zoning Board of Appeals,* 146 Conn. 70, 73, 147 A.2d 472. It is the intent expressed in appropriate language in the legislation which controls. *Lee Bros. Furniture Co.* v. *Cram,* 63 Conn. 433, 438, 28 A. 540; *Mad*

*River Co.* v. *Wolcott,* 137 Conn. 680, 688, 81 A.2d 119; *Park Regional Corporation* v. *Town Plan & Zoning Commission,* supra. Under some circumstances, indications of intent in the legislative history may be consulted to ascertain the meaning of ambiguous statutory language. *Sullivan* v. *Town Council,* 143 Conn. 280, 286, 121 A.2d 630; *Lee* v. *Lee,* 145 Conn. 355, 358, 143 A.2d 154; *Bird* v. *Plunkett,* 139 Conn. 491, 504, 95 A.2d 71; 2 Sutherland, Statutory Construction (3d Ed.) § 5015. But courts cannot import an intent into legislation devoid of language fit to express it. *Loew* v. *Falsey,* 144 Conn. 67, 72, 127 A.2d 67. Sections 22-127 and 22-159 cannot be construed to prohibit the plaintiff from marketing milk which has a 2 per cent butterfat content and is labeled in accordance with § 22-135.

There is error, the judgment is set aside and the case is remanded with direction to sustain the appeal.

In this opinion the other judges concurred.