## DYVON SMALL *v.* GOING FORWARD, INC.
## (SC 17522)

Borden, Norcott, Katz, Palmer, Vertefeuille, Zarella and Sullivan, Js.*

---

\* This case originally was argued before a panel of this court consisting of Justices Borden, Norcott, Katz, Palmer and Vertefeuille. Thereafter, the court, pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the case be considered en banc. Accordingly, Justice Zarella and Senior Justice Sullivan were added to the panel, and they have read the record, briefs and transcript of the oral argument.

Argued September 5, 2006—officially released February 20, 2007

*Daniel S. Blinn,* with whom, on the brief, was *Matthew T. Theriealt,* for the appellant (plaintiff).

*John B. Farley,* with whom were *Regan O'Malley,* and, on the brief, *William J. McGrath* and *Kevin J. Greene,* for the appellee (defendant).

*Richard Blumenthal,* attorney general, and *Garry R. Desjardins, Thomas K. Jones* and *Phillip Rosario,* assistant attorneys general, filed a brief for the state of Connecticut as amicus curiae.

*Opinion*

NORCOTT, J. The sole issue in this certified appeal is whether General Statutes § 14-62, and specifically § 14-62 (a) (9),[1] imposes a "reasonable cost" limitation on the amount that an automobile dealer may charge as a "conveyance fee" for processing documentation or "performing services related to the closing of a sale . . . ." The plaintiff, Dyvon Small, appeals, following our grant of certification,[2] from the judgment of the Appellate Court answering a reserved question in favor of the defendant, Going Forward, Inc., and concluding that § 14-62 (a) (9) imposes disclosure obligations, but does not regulate the amount that a car dealer may charge as a conveyance fee. *Small* v. *Going Forward, Inc.*, 91 Conn. App. 39, 45–46, 879 A.2d 911 (2005). We affirm the judgment of the Appellate Court.

The record reveals the following stipulated facts and procedural history. On or about June 5, 2002, the plaintiff entered into a contract with the defendant, a Connecticut corporation and licensed dealer of motor vehicles, to purchase a 2001 Chrysler 300M. The contract included a " 'dealer conveyance fee' " of $299, which was disclosed on the purchase order. That pur-

---

[1] General Statutes § 14-62 (a) provides in relevant part: "Each sale shall be evidenced by an order properly signed by both the buyer and seller, a copy of which shall be furnished to the buyer when executed, and an invoice upon delivery of the motor vehicle, both of which shall contain the following information . . . (9) any dealer conveyance fee or processing fee and a statement that such fee is not payable to the state of Connecticut printed in at least ten-point bold type on the face of both order and invoice. For the purposes of this subdivision, 'dealer conveyance fee' or 'processing fee' means a fee charged by a dealer to recover reasonable costs for processing all documentation and performing services related to the closing of a sale, including, but not limited to, the registration and transfer of ownership of the motor vehicle which is the subject of the sale."

[2] We granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly answer the reserved question in the negative?" *Small* v. *Going Forward, Inc.*, 276 Conn. 910, 886 A.2d 423 (2005).

chase order also disclosed, in ten point bold type, that " 'THE DEALER CONVEYANCE "FEE" IS NOT PAY-ABLE TO THE STATE OF CONNECTICUT.' " The plaintiff signed the purchase order, and the defendant accepted it, thus completing the sale and transfer of the vehicle.

Thereafter, the plaintiff, a resident of Connecticut who has proposed to represent the class of persons who had purchased motor vehicles from the defendant, brought this class action. He claims that the defendant's $299 conveyance fee violated § 14-62 because it exceeded the reasonable costs for processing all documentation and performing costs related to closing the sales of motor vehicles. The plaintiff also claims that this breach of § 14-62 was a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and seeks compensatory and punitive damages, attorney's fees and injunctive relief.

After the trial court denied the defendant's motion to strike, the parties jointly requested that the trial court reserve the underlying question of law involved herein for the advice of the Appellate Court pursuant to General Statutes § 52-235 and Practice Book § 73-1. Thereafter, the trial court granted the parties' request, and sought advice from the Appellate Court on the issue of whether "§ 14-62 of the General Statutes regulate[s] the amount that a motor vehicle dealer may charge as a dealer conveyance fee, such that a court may determine that the statute is violated if the amount charged is not reasonable in light of the dealer's reasonable costs for processing all documentation and performing services related to the closing of the sale of the vehicle?"

The Appellate Court answered the reserved question in the negative. See *Small* v. *Going Forward, Inc.*, supra, 91 Conn. App. 46. The Appellate Court concluded that § 14-62 (a) is plain and unambiguous, and that

"[c]reating an obligation for dealers to disclose certain information in both the order and the invoice is [its] unmistakable and primary purpose . . . ." Id., 44. The Appellate Court concluded that the use of the word "reasonable" in the statute does not substantively limit the amount that a dealer can charge as a conveyance fee, because it is a definition that, "[r]ead in context . . . relates only to the dealer's duty to disclose the fee. This definitional language defines the terms used in the primary, or substantive, parts of the statute. There is no indication that it gives rise to a separate obligation." Id., 45; see also id., 46 ("[i]t appears that, here, the definition of fees, as the 'reasonable costs' related to the closing of the sale, is meant to explain what information must be disclosed"). This certified appeal followed. See footnote 2 of this opinion.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Connecticut Ins.*

*Guaranty Assn.* v. *State*, 278 Conn. 77, 82, 896 A.2d 747 (2006). "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Alexson* v. *Foss*, 276 Conn. 599, 605, 887 A.2d 872 (2006).

We begin with the determination that our inquiry in the present case may be informed by extratextual sources because the thoughtful arguments of the parties and the amicus curiae, the state of Connecticut, demonstrate that the relevant statutory language is subject to more than one "reasonable interpretation." The plaintiff, supported by the amicus, contends that the Appellate Court improperly concluded that § 14-62 merely imposes a disclosure obligation and is not a substantive limitation on the amount that a car dealership may charge as a conveyance fee. Specifically, the plaintiff emphasizes that the Appellate Court's reading of the statute renders meaningless the word "reasonable" in the definition of conveyance fees in subsection (a) (9) of § 14-62, and also is inconsistent with subsection (c) of § 14-62, which requires dealerships to reduce conveyance fees by a "proportional amount" when their customers register their cars for themselves. The plaintiff and the amicus also contend that the Appellate Court's construction of § 14-62 raises the specter of dealerships luring customers with the promise of low prices, and then subjecting them to inflated conveyance fees.

In response, the defendant contends that § 14-62 is plainly and unambiguously[3] a disclosure statute, and not a substantive limitation on conveyance fees. The defendant relies on the statute's title, and the definitional, rather than regulatory, nature of the statutory

---

[3] The defendant also contends, however, that should this court find that § 14-62 is ambiguous, the defendant's reading of the statute is supported by the relevant legislative history.

language at issue. The defendant also disagrees with the plaintiff's reading of § 14-62 (c), and claims that, if the legislature had intended to regulate conveyance fees, it would have used specific mandatory language doing so. Finally, the defendant notes that customers wishing to avoid high conveyance fees are free to take their business to other dealerships, or to reduce those fees by handling the registration paperwork by themselves. We agree with the defendant that § 14-62 does not impose a reasonable cost limitation on the amount that an automobile dealer may charge as a conveyance fee.

We begin with the relevant statutory language. Section 14-62 (a), the subsection specifically at issue in this appeal, requires that each motor vehicle "sale shall be evidenced by an order properly signed by both the buyer and seller, a copy of which shall be furnished to the buyer when executed, and an invoice upon delivery of the motor vehicle, both of which shall contain the following information: (1) Make of vehicle; (2) year of model, whether sold as new or used, and on invoice the identification number; (3) deposit, and (A) if the deposit is not refundable, the words 'No Refund of Deposit' shall appear at this point, and (B) if the deposit is conditionally refundable, the words 'Conditional Refund of Deposit' shall appear at this point, followed by a statement giving the conditions for refund, and (C) if the deposit is unconditionally refundable, the words 'Unconditional Refund' shall appear at this point; (4) cash selling price; (5) finance charges, and (A) if these charges do not include insurance, the words 'No Insurance' shall appear at this point, and (B) if these charges include insurance, a statement shall appear at this point giving the exact type of coverage; (6) allowance on motor vehicle traded in, if any, and description of the same; (7) stamped or printed in a size equal to at least ten-point bold type on the face of both order

and invoice one of the following forms: (A) 'This motor vehicle not guaranteed', or (B) 'This motor vehicle is guaranteed', followed by a statement as to the terms of such guarantee, which statement shall not apply to household furnishings of any trailer; (8) if the motor vehicle is new but has been subject to use by the seller or use in connection with his business as a dealer, the word 'demonstrator' shall be clearly displayed on the face of both order and invoice; (9) *any dealer convey-ance fee or processing fee and a statement that such fee is not payable to the state of Connecticut printed in at least ten-point bold type on the face of both order and invoice. For the purposes of this subdivision, 'dealer conveyance fee' or 'processing fee' means a fee charged by a dealer to recover reasonable costs for processing all documentation and performing services related to the closing of a sale, including, but not lim-ited to, the registration and transfer of ownership of the motor vehicle which is the subject of the sale.*" (Emphasis added.)

The plaintiff's reading of § 14-62 (a), namely, that, "[i]f the legislature intended the statute to be strictly one of disclosure, then it would not have been necessary to include the term 'reasonable' within the definition," has initial appeal in light of the statutory language stand-ing alone and in view of the "basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) *Board of Education* v. *State Board of Education,* 278 Conn. 326, 335, 898 A.2d 170 (2006). The plaintiff also notes correctly that § 14-62 is a consumer protection statute that, like CUTPA, is remedial in nature and is, therefore, liberally construed in favor of those the legislature intended to benefit. See, e.g., *Eder*

*Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 379, 880 A.2d 138 (2005). The plaintiff's view is, however, based on a superficial reading of only one subsection of the statute, along with two maxims of statutory construction read in isolation.[4] A closer reading of § 14-62, related statutes and the legislative history leads us to the conclusion that § 14-62 (a) (9) is a disclosure rule and not a substantive limitation on the amount that dealers may charge as a conveyance fee.

The primary problem with the plaintiff's reading of § 14-62 (a) (9) is that it is undermined by the language of that clause viewed in the context of the rest of the subsection, as well as the chapter as a whole.[5] A review

---

[4] This case is yet another example of the canons' primary limitation, namely, that for "almost every maxim found in the 'grab bag' of canons, an equal and opposite proposition may be found." *Miller's Pond Co., LLC* v. *New London*, 273 Conn. 786, 811–12 n.25, 873 A.2d 965 (2005). "Although the so-called canons of statutory construction may at times serve as useful tools in deciphering legislative meaning, to rely on any one of them as a compelling factor in the interpretive process is problematic, because as Professor Karl Llewellyn persuasively has demonstrated, 'there are two opposing canons on almost every point.' K. Llewellyn, 'Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed,' 3 Vand. L. Rev. 395, 401 (1950). The so-called 'canons' are not that, at least in the sense that any one of them reliably can be determined to apply or not to apply in any given case. They are, instead, merely guides drawn from experience, to be employed or not to be employed carefully and judiciously, depending on the circumstances. See F. Frankfurter, 'Some Reflections on the Reading of Statutes,' 47 Colum. L. Rev. 527, 544–45 (1947); see also *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 455, 692 A.2d 742 (1997). 'To permit them to displace the conclusions that careful interpretation yields . . . would be a disservice to the legislative process, as well as to the judicial exercise of interpreting legislative language based upon the premise that the legislature intends to enact reasonable public policies.' *United Illuminating Co.* v. *New Haven*, supra, 455." *Burke* v. *Fleet National Bank*, 252 Conn. 1, 23–24, 742 A.2d 293 (1999).

[5] We note that § 14-62 is entitled, "*Order and invoice on sale of motor vehicle; information required.* Dealer preparation charges. Certificate of title on sale of used motor vehicle." (Emphasis added.) Citing this court's decision in *Peck* v. *Jacquemin*, 196 Conn. 53, 491 A.2d 1043 (1985), the defendant relies on this title in support of its construction of the statute. In *Peck*, we noted the title appended to the statute at issue, and stated that, "[t]he title and stated purpose of legislation are, while not conclusive,

of the language at issue in its structural context demonstrates that it solely is definitional in nature, rather than regulatory or prohibitory. See *Toll Gate Farms, Inc.* v. *Milk Regulation Board*, 148 Conn. 341, 346, 170 A.2d 883 (1961) (statutory definition of "skimmed milk" that did not encompass nonskim, but low-fat milk bottled by plaintiff did not preclude sale of plaintiff's milk because that sale would be regulated by other statutory provision actually governing all milk sales);[6] see also 1A J. Sutherland, Statutory Construction (6th Ed. Singer 2002) §§ 20:2, 20:8 and 20:16 (distinguishing between various functions of component parts of statute, including definitions and standards of conduct). The subject of the mandatory language of § 14-62 is the content of the purchase order and invoice, as subsection (a) provides that each motor vehicle *"sale shall be evi-*

---

valuable aids to construction." Id., 68 n.17; see also, e.g., *Burke* v. *Fleet National Bank*, 252 Conn. 1, 13, 742 A.2d 293 (1999) ("[a]lthough the title of a statute is not determinative of its meaning, we often have looked to a statute's title as some evidence of that meaning"). The title that the defendant relies on is, however, the statute's boldface catchline, which, in light of our recent decision in *Clark* v. *Commissioner of Correction*, 281 Conn. 380, 917 A.2d 1 (2006), is not an appropriate tool for the construction of a statute. In *Clark*, we noted a linguistic difference between the title of Connecticut's extradition statute, General Statutes § 54-161, and the title to the Uniform Criminal Extradition Act, but concluded that "[n]o inference regarding legislative intent may be drawn from this linguistic difference, however, because boldface catchlines . . . 'are prepared, and from time to time changed, by the Revisors [of the General Statutes] and are intended to be informal brief descriptions of the contents of the [statutory] sections. . . . These boldface catchlines should not be read or considered as statements of legislative intent since their sole purpose is to provide users with a brief description of the contents of the sections.'" Id., 389 n.14, quoting General Statutes, preface, p. vii.

[6] The plaintiff argues that the analysis of *Toll Gate Farms, Inc.* v. *Milk Regulation Board*, supra, 148 Conn. 346–47, is inapposite because the present case is analogous to attempting to sell regular milk as skim milk; put differently, in the plaintiff's view, a fee that is unreasonable simply is not a "'conveyance fee'" under § 14-62 and cannot be labeled as such. We disagree with the plaintiff's assessment of these statutes because, as previously discussed, the structure of the statutes at issue indicates that § 14-62 (a) (9) is descriptive, rather than proscriptive.

*denced* by an order properly signed by both the buyer and seller, a copy of which shall be furnished to the buyer when executed, and an invoice upon delivery of the motor vehicle, both of which *shall contain the following information . . .* any dealer conveyance fee or processing fee and a statement that such fee is not payable to the state of Connecticut printed in at least ten-point bold type on the face of both order and invoice." (Emphasis added.) General Statutes § 14-62 (a) (9).

Indeed, a review of other statutes, some of which are cited by the plaintiff in his reply brief, demonstrates that the legislature affirmatively has regulated fees with a reasonableness standard in other contexts, but has done so in the section of the statute actually governing substantive conduct.[7] See, e.g., General Statutes § 1-205 (i) (freedom of information commission "shall make available to the public the printed reports of its decisions, opinions and related materials at a *reasonable cost* not to exceed the actual cost thereof to said commission but not less than twenty-eight dollars per item" [emphasis added]); General Statutes § 4a-2b (department of administrative services "may charge the housing authorities a *reasonable fee* to provide for the administrative costs of the [master property and casualty insurance] program" for government funded housing units [emphasis added]); General Statutes § 36a-785 (c) (The holder of an installment sales contract "shall within three days of the retaking furnish or mail, by registered or certified mail, to the last known address

---

[7] We note that at least one other state also has used "reasonableness" as a regulatory guidepost in this context, but has done so with statutory language and organization indicating in clear and certain terms that it intends to regulate those processing or conveyance fees. See Md. Code Ann., Transportation § 15-311.1 (b) (1) (Michie 2006) ("[i]f a dealer charges a dealer processing charge, the charge: [i] [*s]hall be reasonable*; [ii] [m]ay not exceed $100; and [iii] [s]hall reflect dealer expenses generally incurred for the services identified in subsection [a][1] of this section" [emphasis added]).

of the buyer a written statement of the unaccelerated sum due under such contract and the actual and *reasonable* expense of any retaking and storing. For failure to furnish or mail such statement as required by this section, the holder of the contract shall forfeit the right to claim payment for the actual and reasonable expenses of retaking and storage . . . ." [Emphasis added.]); see also General Statutes § 14-99h (c) ("Each new car dealer, used car dealer or lessor shall charge *reasonable rates* for etching services and parts marking services rendered within the state pursuant to subsections [a] and [b] of this section and shall file a schedule of such rates with the Commissioner of Motor Vehicles not later than September first in each year. Each such dealer or lessor may from time to time file an amended schedule of such rates with the commissioner. No such dealer or lessor may charge any rate for such etching services or parts marking services which is greater than the rates contained in the most recent schedule filed with the commissioner." [Emphasis added.]); General Statutes § 42-423 (e) ("[i]n addition to charges for excess wear and tear under chapter 743k, a consumer lease of a motor vehicle may provide for the imposition of a *reasonable charge* for excess mileage" [emphasis added]).

That § 14-62 (a) (9) is not a substantive limitation on the amount charged is further demonstrated by § 14-62 (c), which more specifically regulates conveyance fees. Section 14-62 (c) provides: "Each dealer shall provide a written statement to the buyer or prominently display a sign in the area of his place of business in which sales are negotiated which shall specify the amount of any conveyance or processing fee charged by such dealer, the services performed by the dealer for such fee, that such fee is not payable to the state of Connecticut and that the buyer may elect, where appropriate, to submit the documentation required for the registration and

transfer of ownership of the motor vehicle which is the subject of the sale to the Commissioner of Motor Vehicles, in which case the dealer shall reduce such fee by a proportional amount. The Commissioner of Motor Vehicles shall determine the size, typeface and arrangement of such information." Subsection (c) of § 14-62 is telling, because it indicates that the legislature did act affirmatively to regulate *some* aspects of the conveyance fee, while leaving the precise amount for the dealer to determine, so long as that fee is disclosed properly. Indeed, the directive of § 14-62 (c) providing that dealers shall reduce conveyance fees by a "proportional amount" for customers who elect to handle their own documentation is phrased in conduct regulating language, unlike the language of § 14-62 (a) (9) relied on by the plaintiff.[8] Finally, the legislature's directive

---

[8] In our view, the dissent overemphasizes the import of § 14-62 (c), which it contends "demonstrates that the legislature . . . did not believe it was somehow barred from imposing a substantive obligation within a statute that has as its primary purpose requiring disclosure. Put another way, the fact that the dealer is required by the statute to reduce the fee by a proportional amount if the buyer elects to submit the documentation to the commissioner of motor vehicles himself indicates that the legislature did not intend for the primary purpose of § 14-62, requiring disclosure, to be its exclusive purpose." Although § 14-62 in its entirety is a comprehensive statute that has other substantive components beyond disclosure; see, e.g., General Statutes § 14-62 (b) ("[n]o dealer shall include in the selling price a dealer preparation charge for any item or service for which he is reimbursed by the manufacturer or any item or service not specifically ordered by the buyer and itemized on the invoice"); the relevant language of § 14-62 (c) requires only that the reduction of the fee upon a buyer's self-registration reflect the significance of the vehicle registration and transfer of ownership activity to the dealer's calculation of the fee. Subsection (c) of § 14-62 cannot be read as a limitation on the outer limits of the fee itself because it does not address the other components of conveyance fees under the expansive definition of such fees under § 14-62 (a) (9), the statute that is the subject of this appeal. See General Statutes § 14-62 (a) (9) (defining such fees as one "charged by a dealer to recover reasonable costs for processing all documentation and performing services related to the closing of a sale, *including, but not limited to*, the registration and transfer of ownership of the motor vehicle which is the subject of the sale" [emphasis added]). Thus, contrary to the dissent's assertion, subsection (c) of § 14-62 does not

to the commissioner of motor vehicles to determine by regulation the proper size, typeface and arrangement of the disclosure information indicates that it also could have, if it desired, referred the question of any fee amount limitations to the commissioner for regulation.[9]

necessarily indicate that the "legislature intended the fee to reflect the dealer's cost of performance."

[9] We also note that, notwithstanding the legislature's grant of authority to the commissioner of motor vehicles to "make, alter or repeal regulations governing the administration of all statutes relating to the license and business of dealers and repairers"; General Statutes § 14-63 (a); a review of the relevant regulations chapter indicates that the commissioner has not enacted procedural or substantive regulations governing the amount of such fees. This absence is even more telling in light of the fact that the commissioner has regulated with great specificity other aspects of the advertising and pricing of new motor vehicles. See, e.g., Regs., Conn. State Agencies § 42-110b-28 (b) (6) ("[i]t shall be an unfair or deceptive act or practice for a new car dealer or used car dealer to advertise the price for the sale of any motor vehicle unless the stated price in such advertisement includes the federal tax, the cost of delivery, dealer preparation and any other charges of any nature, except any state or local tax or registration fees"); id., § 42-110b-28 (7) ("[i]t shall be an unfair or deceptive act or practice for a new car dealer or used car dealer to advertise in any manner the price which will be paid by such dealer for trade-in vehicles unless the price of the vehicle sold by such dealer to the owner of the trade-in vehicle is within the range of prices at which the dealer usually sells such vehicles and is not increased because of the amount paid for the trade-in vehicle"); id., § 42-110b-28 (9) ("[i]t shall be an unfair or deceptive act or practice for a new car dealer or used car dealer to advertise in any manner that a range of prices [such as 'up to $500' or 'as much as $500'] will be paid by such dealer for trade-in vehicles unless the advertisement clearly and conspicuously discloses the criteria [such as age, condition or mileage] which the dealer will use to determine the amount to be paid for a particular trade-in vehicle"). This regulatory inaction by the agency charged with enforcing § 14-62 further supports our determination that the statute does not regulate the amount of conveyance fees charged by car dealerships. See *Kelo* v. *New London*, 268 Conn. 1, 20–21, 843 A.2d 500 (2004) (concluding that " 'unified land and water areas' " under chapter 132 of the General Statutes includes occupied residential areas because, inter alia, relevant regulations required calculation of relocation expenses and income that could be derived from temporary use of existing homes and businesses), aff'd, 545 U.S. 469, 125 S. Ct. 2655, 162 L. Ed. 2d 439 (2005). It also refutes the dissent's somewhat circular reliance on subsection (23) of § 42-110b-28 (b) of the Regulations of Connecticut State Agencies, which provides: "It shall be an unfair or deceptive act or practice for a new car dealer or a used car dealer to violate any provision of a federal or state statute or regulation concerning the sale or lease of motor vehicles." See also General Statutes § 14-51a ("[t]he commissioner

Moreover, General Statutes (Sup. 2006) § 14-64,[10] the chapter's general enforcement provision, provides fur-

may, after notice and hearing, impose a civil penalty of not more than one thousand dollars on any person, firm or corporation who violates any provision of sections 14-54 to 14-67a, inclusive"); General Statutes (Sup. 2006) § 14-64 ("[t]he commissioner may suspend or revoke the license or licenses of any licensee or impose a civil penalty of not more than one thousand dollars for each violation on any licensee or both, when, after notice and hearing, the commissioner finds that the licensee [1] has violated any provision of any statute or regulation of any state or any federal statute or regulation pertaining to its business as a licensee"). Although the dissent states that it "know[s] of no principle that a regulation of general applicability somehow loses its force because it is not specific," the dissent's reliance on subsection (23) of § 42-110b-28 (b) of the Regulations of Connecticut State Agencies is unpersuasive because it assumes the central issue in this case, namely, whether § 14-62 (a) (9) governs the amount that a dealer may charge as a conveyance fee. Put more simply, the dissent's analysis puts the cart before the horse.

[10] General Statutes (Sup. 2006) § 14-64 provides: "The commissioner may suspend or revoke the license or licenses of any licensee or impose a civil penalty of not more than one thousand dollars for each violation on any licensee or both, when, after notice and hearing, the commissioner finds that the licensee (1) has violated any provision of any statute or regulation of any state or any federal statute or regulation pertaining to its business as a licensee or has failed to comply with the terms of a final decision and order of any state department or federal agency concerning any such provision; or (2) has failed to maintain such records of transactions concerning the purchase, sale or repair of motor vehicles or major component parts, as required by such regulations as shall be adopted by the commissioner, for a period of two years after such purchase, sale or repairs, provided the records shall include the vehicle identification number and the name and address of the person from whom each vehicle or part was purchased and to whom each vehicle or part was sold, if a sale occurred; or (3) has failed to allow inspection of such records by the commissioner or the commissioner's representative during normal business hours, provided written notice stating the purpose of the inspection is furnished to the licensee, or has failed to allow inspection of such records by any representative of the Division of State Police within the Department of Public Safety or any organized local police department, which inspection may include examination of the premises to determine the accuracy of such records; or (4) has made a false statement as to the condition, prior ownership or prior use of any motor vehicle sold, exchanged, transferred, offered for sale or repaired if the licensee knew or should have known that such statement was false; or (5) is not qualified to conduct the licensed business, applying the standards of section 14-51 and the applicable regulations; or (6) has violated any provision of sections 42-221 to 42-226, inclusive; or (7) has failed to fully execute or provide the buyer with (A) an order as described in section 14-62, (B) the properly assigned certificate of title, or (C) a temporary transfer

ther indication that the legislature did not view § 14-62 as imposing a substantive limitation on conveyance fees. Although General Statutes (Sup. 2006) § 14-64 (1) contains a general catch-all provision allowing the commissioner to sanction a licensee if he or she finds that a licensee has "violated any provision of any statute or regulation of any state or any federal statute or regulation pertaining to its business as a licensee or has failed to comply with the terms of a final decision and order of any state department or federal agency concerning any such provision," that section also recites a litany of sanctionable specific actions, none of which include the charging of unreasonable conveyance fees. See footnote 10 of this opinion. Indeed, § 14-64 specifically mentions § 14-62, but only in the context of when a dealer "has failed to fully execute or provide the buyer with (A) *an order as described in section 14-62*, (B) the properly assigned certificate of title, or (C) a temporary transfer or new issue of registration . . . ." (Emphasis added.) General Statutes (Sup. 2006) § 14-64 (7).[11]

or new issue of registration; or (8) has failed to deliver a motor vehicle free and clear of all liens, unless written notification is given to the buyer stating such motor vehicle shall be purchased subject to a lien; or (9) has violated any provision of sections 14-65f to 14-65j, inclusive; or (10) has used registration number plates issued by the commissioner, in violation of the provisions and standards set forth in sections 14-59 and 14-60 and the applicable regulations; or (11) has failed to secure or to account for or surrender to the commissioner on demand official registration plates or any other official materials in its custody. In addition to, or in lieu of, the imposition of any other penalties authorized by this section, the commissioner may order any such licensee to make restitution to any aggrieved customer."

[11] The legislature's cognizance of conveyance fees is demonstrated by General Statutes § 14-62a (a), also enacted as part of Public Acts 1998, No. 98-182, § 19, at the same time as § 14-62 (a) (9), which governs dealers' advertising practices and provides: "No dealer licensed under the provisions of section 14-52 shall advertise the price of any motor vehicle unless the stated price in such advertisement includes the federal tax, the cost of delivery, dealer preparation and any other charges of any nature, except that such advertisement shall *state in at least eight-point bold type that any state or local tax, registration fees or dealer conveyance fee or processing fee, as defined in subsection (a) of section 14-62, is excluded from such stated price.*" (Emphasis added.)

Finally, the only relevant comments in the legislative history provide no indication that the legislature intended § 14-62 (a) (9) to regulate the amount that a dealer could charge as a conveyance fee, but rather, that it viewed the statute as an important disclosure measure designed to inform consumers about the optional nature of such fees.[12] Section 14-62 (a) (9) and (c) were enacted in 1998 as § 18 of No. 98-182 of the 1998 Public Acts. Speaking in support of that portion of the bill that ultimately was enacted as Public Act 98-

[12] The amicus posits a hypothetical that it contends illustrates how failure to limit conveyance fees may encourage dealers to engage in "deceptive price manipulation" wherein dealer A charges $100 less than dealer B for the price on a new car, but $200 more for the conveyance fee, thus causing the customer to pay $100 more for the same car while under the guise of having received a lower price. The dissent raises a similar concern, noting that "[i]n the context of most car sales, the buyer does not ordinarily become interested in the conveyance fee until he has decided to buy the car," and that a buyer faced with a deal that includes a reduced vehicle price and an increased conveyance fee is "faced with walking away from the deal or accepting it, but if the buyer stays, there would be no regulatory or legal sanction on the seller for exacting an unreasonably high conveyance fee that has no real relation to the seller's actual costs for performing the services necessary to close the sale." The dissent also contends that our conclusion in the present case creates an "incentive" for both scrupulous and unscrupulous car dealers to engage in price manipulation. In our view, the precise disclosure required by the statute guards against this situation by giving the consumer the information that he or she needs to make an educated decision as to the actual price of the car that he or she has negotiated. Indeed, that the disclosure contained in § 14-62 (a) (9) also requires a statement that the fee "is not payable to the state of Connecticut printed in at least ten-point bold type on the face of both order and invoice" guards against an unscrupulous dealer who might attempt to convince its customers that the fee is a nonnegotiable, state mandated tax. Thus, confronted with such a transaction, the informed consumer may very well choose to exercise his freedom to walk away from what he or she perceives as only an illusorily good deal. Moreover, as the defendant points out, to prevent such price manipulation effectively, the legislature would have needed to regulate other substantive elements of the transaction that also are subject to *disclosure* under § 14-62 (a), such as trade-in allowances. See General Statutes § 14-62 (a) (6). Such broad economic regulation is more properly the subject of a comprehensive legislative effort, rather than the judicial process.

182, Representative Jacqueline M. Cocco described it as "actually a consumer protection piece [that] simply states that car dealers should let those buyers of their vehicles know that the dealer conveyance fee in ten point bold type what that dealer conveyance fee is and that it does [not] need [to] be paid by the purchaser of the vehicle, that they indeed can go to the Department of Motor Vehicle[s], do that paperwork themselves, and not be subject to that fee. And also to note that that money is not collected by the State nor none of it does go to the State." 41 H.R. Proc., Pt. 13, 1998 Sess., p. 4342. Similarly, Representative Kenneth P. Green commented: "I really like some of the things [in] the bill. I'm really glad that we're able to now have car dealerships make the public aware of the conveyance. I particularly had an incident where I was told that I had to pay the conveyance fee. I think the bill is in the right direction and that we're moving to let the public know that that's an optional fee." Id., pp. 4376–77. Our conclusion as to the limited scope of § 14-62, therefore, finds support in the legislative history because "[s]tatements of legislators often provide strong indication of legislative intent."[13] (Internal quotation marks omitted.) *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 313, 819 A.2d 260 (2003).

Accordingly, we conclude that § 14-62 (a) imposes a disclosure obligation only, and is not a substantive limitation on the amount that a car dealer may charge as a "conveyance fee." The Appellate Court, therefore,

---

[13] We disagree with the dissent's characterization of our analysis as in violation of the lack of "any principle of statutory interpretation that permits us to read out specific legislative language simply because the legislators did not advert to it in their floor debate." See footnote 3 of the dissent. In our view, the language of § 14-62 (a) (9) is ambiguous with respect to whether it regulates the amount that an automobile dealer may charge as a conveyance fee. We, therefore, find it telling that the legislators supporting its enactment did not describe the new statute as a limit on conveyance fees that their own comments indicated they found problematic.

properly answered the reserved question in the negative.

*The judgment of the Appellate Court is affirmed.*

In this opinion KATZ, PALMER, ZARELLA and SULLI-VAN, Js., concurred.

BORDEN, J., with whom VERTEFEUILLE, J., joins, dissenting. I disagree with the majority's conclusion that General Statutes § 14-62 (a) (9)[1] does not limit the amount that an automobile dealer may charge as a "conveyance fee" to the "reasonable costs" of the listed

---

[1] General Statutes § 14-62 (a) provides: "Each sale shall be evidenced by an order properly signed by both the buyer and seller, a copy of which shall be furnished to the buyer when executed, and an invoice upon delivery of the motor vehicle, both of which shall contain the following information: (1) Make of vehicle; (2) year of model, whether sold as new or used, and on invoice the identification number; (3) deposit, and (A) if the deposit is not refundable, the words 'No Refund of Deposit' shall appear at this point, and (B) if the deposit is conditionally refundable, the words 'Conditional Refund of Deposit' shall appear at this point, followed by a statement giving the conditions for refund, and (C) if the deposit is unconditionally refundable, the words 'Unconditional Refund' shall appear at this point; (4) cash selling price; (5) finance charges, and (A) if these charges do not include insurance, the words 'No Insurance' shall appear at this point, and (B) if these charges include insurance, a statement shall appear at this point giving the exact type of coverage; (6) allowance on motor vehicle traded in, if any, and description of the same; (7) stamped or printed in a size equal to at least ten-point bold type on the face of both order and invoice one of the following forms: (A) 'This motor vehicle not guaranteed', or (B) 'This motor vehicle is guaranteed', followed by a statement as to the terms of such guarantee, which statement shall not apply to household furnishings of any trailer; (8) if the motor vehicle is new but has been subject to use by the seller or use in connection with his business as a dealer, the word 'demonstrator' shall be clearly displayed on the face of both order and invoice; (9) any dealer conveyance fee or processing fee and a statement that such fee is not payable to the state of Connecticut printed in at least ten-point bold type on the face of both order and invoice. For the purposes of this subdivision, 'dealer conveyance fee' or 'processing fee' means a fee charged by a dealer to recover reasonable costs for processing all documentation and performing services related to the closing of a sale, including, but not limited to, the registration and transfer of ownership of the motor vehicle which is the subject of the sale."

services related to the closing of the sale of an automobile. I conclude, consistent with both the language and the evident purpose of the relevant statutory scheme, that a dealer conveyance fee means what § 14-62 (a) (9) says it means, namely, "a fee charged by a dealer to recover reasonable costs" for processing the documentation and performing the other services related to the closing of the sale of the automobile. I therefore dissent.

The specific language at issue is the entirety of subdivision (9) of subsection (a) of § 14-62, which provides that each order and invoice for the sale of an automobile "shall contain the following information . . . any dealer conveyance fee or processing fee and a statement that such fee is not payable to the state of Connecticut printed in at least ten-point bold type on the face of both the order and invoice. For purposes of this subdivision [9], 'dealer conveyance fee' or 'processing fee' means *a fee charged by a dealer to recover reasonable costs* for processing all documentation and performing services related to the closing of a sale, including, but not limited to, the registration and transfer of ownership of the motor vehicle which is the subject of the sale." (Emphasis added.)

The majority concludes that "§ 14-62 (a) (9) is a disclosure rule and not a substantive limitation on the amount that dealers may charge as a conveyance fee," because "the language at issue in its structural context demonstrates that it solely is definitional in nature, rather than regulatory or prohibitory." These are false dichotomies. Simply because § 14-62 embodies disclosure obligations on the seller does not mean that it does not also impose substantive obligations. Simply because the language at issue defines a conveyance fee does not mean that it does not also regulate the amount of the fee. In this regard, it is important to acknowledge, which the majority fails to do, that the entire last sen-

tence of § 14-62 (a) (9)—not just the two words, "reasonable costs," on which the majority focuses—constitutes the definition of "conveyance fee."

Indeed, precisely because the language of the last sentence of § 14-62 (a) (9) *is* definitional, the natural inference is that the legislature intended *all* of the definition, not just *part* of it, to have effect, and that it have *both* a disclosure and regulatory effect in accordance with its language and purpose.[2] In the present case, that inference is supported by the fact that the statute is a consumer protection statute that is remedial in nature, and therefore must be construed in favor of those whom the legislature intended to benefit, namely, car buyers. Those buyers would be more fully protected by affording the definition its most likely meaning, namely, that not only must the conveyance fee be disclosed, but, as § 14-62 (a) (9) specifically provides, the conveyance fee must reflect the "reasonable costs for processing all documentation and performing services related to the closing of a sale, including, but not limited to, the registration and transfer of ownership of the motor vehicle which is the subject of the sale."

[2] I disagree with the majority's conclusion that the fact that the legislature has, in other contexts, elected to regulate fees by incorporating a reasonableness standard in the operative section of the statute means that the legislature intended its definition of a conveyance fee in § 14-62 (a) (9) as limited to the recovery of the dealer's reasonable costs to have no meaning. The mere fact that the legislature has not imposed a reasonableness limit on fees in the definitional section in *other* statutes does not mean that it may never do so, or that it did not intend to do so here. Furthermore, the legislature *has* in some statutes, incorporated a reasonableness limitation in the definitional, rather than operative, portion of the statute. For example, General Statutes § 38a-492, which is entitled, "Coverage for accidental ingestion or consumption of controlled drugs. Benefits prescribed," provides in relevant part: "For purposes of this section, the term 'covered expenses' means the reasonable charges for treatment deemed necessary under generally accepted medical standards." If we were to apply the majority's reasoning in the present case consistently, in interpreting § 38a-492, we would have to ignore the reasonableness limit incorporated into the definition of "covered expenses."

The majority, however, interprets the last sentence of § 14-62 (a) (9) as if it provided as follows: "For the purposes of this subdivision, 'dealer conveyance fee' or 'processing fee' means a fee charged by a dealer . . . for processing all documentation and performing services related to the closing of a sale, including, but not limited to, the registration and transfer of ownership of the motor vehicle which is the subject of the sale." It does not so provide, however. Instead, the last sentence of § 14-62 (a) (9) provides as follows: "For the purposes of this subdivision, 'dealer conveyance fee' or 'processing fee' means a fee charged by a dealer *to recover reasonable costs* for processing all documentation and performing services related to the closing of a sale, including, but not limited to, the registration and transfer of ownership of the motor vehicle which is the subject of the sale." (Emphasis added.) Thus, the majority reads the definition as if there were four words—"to recover reasonable costs"—that are missing, or do not exist. Unless there is some compelling evidence that the legislature did not intend all of its definition to have effect, there is no justification for refusing to give all of its definition meaning and effect. There is no such evidence here.[3]

---

[3] In this connection, the majority's reliance on an absence from the governing regulation of a specific provision dealing with the reasonableness of conveyance fees is unpersuasive. That regulation, § 42-110b-28 (b) (23) of the Regulations of Connecticut State Agencies, provides in relevant part that "[i]t shall be an unfair or deceptive act or practice for a new car dealer or a used car dealer to violate *any provision of a . . . state statute . . . concerning the sale or lease of motor vehicles.*" (Emphasis added.) I know of no principle that a regulation of general applicability somehow loses its force because it is not specific.

Similarly, the majority's reliance on the absence from the legislative history of any discussion of the amount or reasonableness of conveyance fees is also unavailing. Simply because the legislators focused in their discussion on the disclosure aspect of the definition cannot mean that they intended specific definitional language in the statute—"to recover reasonable costs"—to disappear. I am unaware of any principle of statutory interpretation that permits us to read out specific legislative language simply because the legislators did not advert to it in their floor debate.

We have previously recognized that "[c]ourts are bound to accept the legislative definition of terms in a statute." *Toll Gate Farms, Inc.* v. *Milk Regulation Board*, 148 Conn. 341, 347, 170 A.2d 883 (1961).[4] Ignoring this rule, the majority has simply read out of the definition the language "to recover reasonable costs"—essen-

---

[4] *Toll Gate Farms, Inc.* v. *Milk Regulation Board*, supra, 148 Conn. 341, the case upon which the majority relies for the proposition that definitional language may not impose substantive limitations on the terms within a regulatory provision, does not support this conclusion. In that case, the issue before the court was "whether a duly licensed dealer in, or producer of, milk or milk products can sell, or offer or possess with intent to sell, milk from which sufficient cream has been removed to reduce its butterfat content to less than three and one-quarter per cent but more than one-half of one per cent." Id., 342. The statutory scheme provided clear guidelines for labeling milk with 0.5 percent or less butterfat. Such milk was defined as "skimmed milk" in General Statutes § 22-127, and was required to be labeled as such in General Statutes § 22-159. Id., 342–43. The statutory scheme further provided that, unless otherwise labeled, milk sold or offered for sale was to be deemed as milk of "standard quality," which was defined as milk that contained 3.25 percent or more of butterfat. General Statutes § 22-152. Milk containing less than 3.25 percent, but more than 0.5 percent butterfat, was not defined in the statutory scheme. *Toll Gate Farms, Inc.* v. *Milk Regulation Board*, supra, 346. The regulatory portion of the statutory scheme was set forth in § 22-159, which provided in relevant part: " 'No person shall sell, or offer or expose for sale, or have in his possession with the intent to mix with other dairy products to be sold, milk from which the cream or any part thereof has been removed, unless the product is plainly labeled. Skimmed milk may be sold in milk bottles or other approved containers if properly marked or tagged as such skimmed milk.' " Id., 347. In interpreting the regulatory provision of § 22-159, the court began with the proposition that the regulatory provision "must be read together with the definition of 'skimmed milk' in § 22-127." Id. The court then read the regulatory provision consistently with the statutory definition of " 'skimmed milk' " to conclude that the first and second sentences of § 22-159 regulated two entirely different categories of milk, the first sentence dealing with "the general category of milk 'from which the cream or any part thereof has been removed,' " and the second sentence dealing with " 'skimmed milk' " as defined in § 22-127. Id., 348. Thus, the court applied the regulatory portion of the statute within the context of the definition supplied by the legislature for purposes of that regulatory provision, holding that the defendant milk regulation board improperly concluded that the sale of properly labeled 2 percent milk was barred by the statutory scheme. Id., 348–49. That is precisely the way that the court should read the regulatory provision contained in § 14-62 (9).

tially rewriting the legislative definition of the term "conveyance fee." Despite the majority's conclusion that somehow *this* language of the single definitional sentence has no meaning or application because it is definitional, but the *rest* of the same definitional sentence does have meaning or application, I do not understand why that is so. As the majority acknowledges, we ordinarily do not interpret statutes to render statutory language superfluous. I agree with that. The majority explains, however, that the canons of construction are merely guides to interpretation and cannot displace the process of careful and thoughtful interpretation. I also agree with that. But that explanation does not lead to the majority's conclusion that, when the legislature specifically included in the § 14-62 (a) (9) definition of "conveyance fee" the language "to recover reasonable costs," it intended that language to have no meaning or application whatsoever. Put another way, the majority's explanation does not lead to the conclusion that only those four words of the definition of "conveyance fee" have no meaning or application, but the rest of the words of the definition do have meaning and application. Yet that is precisely the effect of the majority's interpretation.

That the legislature intended the phrase "to recover reasonable costs" to have meaning is also supported by the language of subsection (c) of § 14-62, which provides in relevant part: "Each dealer shall provide a written statement to the buyer or prominently display a sign in the area of his place of business in which sales are negotiated which shall specify the amount of any conveyance or processing fee charged by such dealer, *the services performed by the dealer for such fee*, that such fee is not payable to the state of Connecticut and that the buyer may elect, where appropriate, to submit the documentation required for the registration and transfer of ownership of the motor vehicle which is

the subject of the sale to the Commissioner of Motor Vehicles, *in which case the dealer shall reduce such fee by a proportional amount. . . .*" (Emphasis added.) First, the requirement that the dealer reduce the conveyance fee by a proportional amount demonstrates that the legislature, unlike the majority, did not believe it was somehow barred from imposing a substantive obligation within a statute that has as its primary purpose requiring disclosure. Put another way, the fact that the dealer is required by the statute to reduce the fee by a proportional amount if the buyer elects to submit the documentation to the commissioner of motor vehicles himself indicates that the legislature did not intend for the primary purpose of § 14-62, requiring disclosure, to be its exclusive purpose. Second, the nature of the substantive obligation, that the dealer must reduce the conveyance fee by a proportional amount when the buyer elects to submit to the commissioner of motor vehicles the registration and transfer of ownership documents is consistent with the definition of the conveyance fee as one that reflects the reasonable costs of the dealer because subsection (c) of § 14-62 requires that the reduction in the fee be *proportional* to the costs of registration and transfer of ownership documents. This language, especially when read together with the requirement that the dealer must disclose the services performed by the dealer for the conveyance fee, indicates that the legislature intended the fee to reflect the dealer's cost of performance.

The majority's interpretation *might* make some sense if it could be established that, in the context of the statutory scheme, the inclusion of the four missing words would serve no ascertainable legislative purpose. That, however, is far from the case.

First, the missing words serve the legislative purpose, not only of disclosure that there is such a thing as a

conveyance fee and its amount, but also the legislative purpose of requiring that the fee be reasonable so as to protect the consumer. In the context of most car sales, the buyer does not ordinarily become interested in the conveyance fee until he has decided to buy the car. With no limitation whatsoever on the amount of the fee, an unscrupulous car dealer can lowball the sales price and then, once the buyer has agreed, highball the conveyance fee to recoup profits in the form of the fee. The buyer then would be faced with walking away from the deal or accepting it, but if the buyer stays, there would no regulatory or legal sanction on the seller for exacting an unreasonably high conveyance fee that has no real relation to the seller's actual costs for performing the services necessary to close the sale. It takes no flight of imagination to recognize the avoidance of such a scenario as a legitimate legislative purpose of requiring that any conveyance fee be "reasonable."

Second, the definition of "conveyance fee" applies, not just to § 14-62, but also to General Statutes § 14-62a (a), which governs advertising of prices of car sales.[5] Section 14-62a (a) provides that the stated advertised price must include the federal tax, cost of delivery, dealer preparation and other charges, "except that such advertisement shall state in at least eight-point bold type that any state or local tax, registration fees *or dealer conveyance fee or processing fee, as defined in subsection (a) of section 14-62*, is excluded from such stated price." (Emphasis added.) The legislative importance of this provision is underscored by subsection

---

[5] General Statutes § 14-62a (a) provides: "No dealer licensed under the provisions of section 14-52 shall advertise the price of any motor vehicle unless the stated price in such advertisement includes the federal tax, the cost of delivery, dealer preparation and any other charges of any nature, except that such advertisement shall state in at least eight-point bold type that any state or local tax, registration fees or dealer conveyance fee or processing fee, as defined in subsection (a) of section 14-62, is excluded from such stated price."

(b) of § 14-62a, which imposes a fine of not more than $1000, as well as suspension or revocation of license, for any violation of subsection (a) of § 14-62a.

It is obvious that the purpose of this statute is to require truth in price advertising for the benefit of the consumer. What the majority opinion fails to grasp is that the limitation of a dealer's conveyance fee to the amount of the dealer's reasonable costs in closing the sale of an automobile furthers the primary purpose of the statute by preventing a dealer from misleading consumers regarding the actual "price" of an automobile by manipulating the conveyance fee to hide profit. In the absence of the limit provided by the legislature in the definition of "conveyance fee," the protection afforded consumers by § 14-62 is significantly weakened. Thus, if the conveyance fee is substantively limited to that which is "reasonable," an unscrupulous car dealer could not easily advertise an unreasonably low price—thereby attracting car buyers to *its* lot, rather than to the lots of its competitors—and then, once the deal is made, up the ante with an unregulated and unreasonable conveyance fee. Under the majority's interpretation, however, the unscrupulous car dealer is given the incentive to do precisely that. In fact, under the majority's interpretation, by virtue of which a conveyance fee is wholly unregulated, even scrupulous car dealers are given the incentive to lowball their prices and highball their conveyance fees, in order to meet the competition of those unscrupulous dealers who are doing the same. This set of incentives, created by the majority's interpretation, would wholly undermine the fundamental purpose of the section. We should not read a statute to undermine its evident purpose.

I would, therefore, reverse the judgment of the Appellate Court, and remand the case to that court with direction to answer the reserved question, "Yes."