SOUTHERN NEW ENGLAND TELEPHONE
COMPANY *v.* SHAUN B. CASHMAN,
COMMISSIONER OF LABOR, ET AL.
(SC 17741)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued January 9—officially released August 28, 2007

*David Vegliante*, with whom were *Lori B. Alexander* and, on the brief, *Christopher A. Kelland*, for the appellant (plaintiff).

*Thomas P. Clifford III*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellee (named defendant).

*Atul Talwar*, pro hac vice, with whom was *Mary E. Kelly*, for the appellee (defendant Local 1298, Communications Workers of America).

*Opinion*

ZARELLA, J. The plaintiff, Southern New England Telephone Company, appeals from the judgment of the trial court affirming the declaratory ruling of the named defendant,[1] Shaun B. Cashman, the commissioner of labor (commissioner), regarding the application of the Connecticut family and medical leave law, General Statutes § 31-51kk et seq. (family and medical leave law),

---

[1] The other defendant in this action, Local 1298, Communications Workers of America (Local 1298), was permitted to intervene in the plaintiff's administrative appeal. Local 1298 is the collective bargaining representative of certain of the plaintiff's employees whose interests may be affected by the commissioner's declaratory ruling.

We refer to Local 1298 and the named defendant, Shaun B. Cashman, the commissioner of labor, collectively as the defendants.

to the sick leave policy set forth in the collective bargaining agreement between the plaintiff and its employees. On appeal, the plaintiff claims that the trial court improperly affirmed the commissioner's ruling that an employer's policy provides "accumulated sick leave," as that term is used in General Statutes § 31-51pp (c) (1), when it grants to each employee a maximum number of sick days per year for which the employee may be paid for his or her own illness but does not permit unused leave at the end of the year to be carried over to the following year. The plaintiff claims that employees subject to policies that do not permit them to carry over unused sick leave are not covered under § 31-51pp (c) (1), which prohibits employers from denying employees the right to use up to two weeks of "accumulated sick leave" for family medical leave purposes. We disagree with the plaintiff and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history, as set forth by the trial court in its memorandum of decision, are relevant to our resolution of this appeal. In 2001, the plaintiff and its employees entered into a collective bargaining agreement providing for a graduated sick leave policy based on longevity of employment. The agreement granted full-time employees no sick leave during their first year of employment, five days of paid sick leave at the commencement of their second year of employment and ten days of paid sick leave at the commencement of their third year of employment and for each year of employment thereafter.[2] The agreement

---

[2] The agreement specifically provided: "A regular or provisionally regular full or part-time employee . . . shall receive normal pay for short periods of time off duty occasioned by personal sickness as indicated below. . . .

"During the first year of net credit service—None.

"During the second year of net credit service—Five working days.

"After two years of net credited service—Ten working days during each service year."

did not permit unused sick leave at the end of the year to be carried over to the following year.

In 2003, the General Assembly amended the family and medical leave law, effective October 1, 2003, to prohibit employers from denying employees the right to use up to two weeks of "accumulated sick leave" for family medical leave purposes. Public Acts 2003, No. 03-213, § 1, codified at General Statutes § 31-51pp (c). On April 16, 2004, the plaintiff requested a declaratory ruling from the commissioner with respect to the following question: "Does an employer's policy provide 'accumulated sick leave,' as that term is used in [§ 31-51pp (c)], when it sets a maximum number of sick days per year for which an employee may be paid for [his or her] own illness, and [when] such leave is *not* carried over from one year to the next but is lost if not used by the employee by the end of any calendar year?"[3] (Emphasis in original.)

Thereafter, the commissioner ruled that the type of paid sick leave described in the collective bargaining agreement satisfied the meaning of "accumulated sick leave" as contemplated in § 31-51pp (c). In support of his ruling, the commissioner cited the remedial purpose of the family and medical leave law[4] and its regulations, and the fact that the plaintiff's policy tied progressive increases in the availability of paid sick leave to an employee's seniority. The commissioner also examined the legislative history of the family and medical leave law and concluded that the General Assembly did not intend to limit the meaning of "accumulated sick leave"

[3] The plaintiff also sought a declaratory ruling on two other questions pertaining to sick leave under the family and medical leave law, neither of which are relevant to the issue on appeal.

[4] The commissioner explained that the law's "intent is to strike a balance between the employer's need for the predictable presence of its employees and [the] employees' need for time off to care for seriously ill family members [or] for their own serious health conditions."

to leave carried over from one year to another. The commissioner thus determined that "accumulated sick leave" under § 31-51pp (c) (1) included "the kind of annual renewal of sick days described under the collective bargaining agreement."

The plaintiff appealed to the trial court from the commissioner's ruling pursuant to General Statutes § 4-183,[5] claiming that the decision was "erroneous, incorrect, in violation of statutory provisions, contrary to law, and based [on] a misapplication and/or misinterpretation of the law." The plaintiff also argued that the decision was arbitrary, capricious and clearly erroneous. The trial court affirmed the ruling on grounds similar to those on which the commissioner had relied. This appeal followed.

The plaintiff claims that § 31-51pp (c) (1) applies only to sick leave policies that permit employees to accumulate sick leave by carrying over unused sick leave from one year to another or on a regular basis over the course of a single year. The defendants respond that, because the statute is remedial in nature, it must be liberally

---

[5] General Statutes § 4-183 provides in relevant part: "(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section.

* * *

"(j) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment. . . ."

construed and applied to sick leave policies similar to that described in the collective bargaining agreement, which does not allow employees to carry over unused sick leave from one year to another.[6] We agree with the defendants.

We begin our analysis by setting forth the applicable standard of review. "Ordinarily, [o]ur resolution of [administrative appeals] is guided by the limited scope of judicial review afforded by the [Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq.] . . . to the determinations made by an administrative agency. [W]e must decide, in view of all the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . .

"A reviewing court, however, is not required to defer to an improper application of the law. . . . It is the function of the courts to expound and apply governing principles of law. . . . We previously have recognized that the construction and interpretation of a statute is a question of law for the courts, where the administrative decision is not entitled to special deference . . . . Questions of law [invoke] a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . .

---

[6] Following the enactment of the family and medical leave law, the plaintiff and its employees entered into a renegotiated collective bargaining agreement, the terms of which are not before this court. Both parties conceded at oral argument, however, that the present appeal involves a live controversy and is not moot because the subsequent collective bargaining agreement contains essentially the same sick leave provisions as the preceding agreement.

Because this case forces us to examine a question of law, namely, [statutory] construction and interpretation . . . our review is de novo." (Internal quotation marks omitted.) *Semerzakis* v. *Commissioner of Social Services*, 274 Conn. 1, 11–12, 873 A.2d 911 (2005). We are also compelled to conduct a de novo review because the issue of statutory construction before this court has not yet been subjected to judicial scrutiny. E.g., *Tracy* v. *Scherwitzky Gutter Co.*, 279 Conn. 265, 272, 901 A.2d 1176 (2006) ("[a] state agency is not entitled . . . to special deference when its determination of a question of law has not previously been subject to judicial scrutiny" [internal quotation marks omitted]); *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control*, 270 Conn. 778, 788, 855 A.2d 174 (2004) ("the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation" [internal quotation marks omitted]).

"The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also

look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Friezo* v. *Friezo*, 281 Conn. 166, 181–82, 914 A.2d 533 (2007).

General Statutes § 31-51pp (c) provides: "(1) It shall be a violation of sections 31-51kk to 31-51qq, inclusive, for any employer to deny an employee the right to use up to two weeks of accumulated sick leave or to discharge, threaten to discharge, demote, suspend or in any manner discriminate against an employee for using, or attempting to exercise the right to use, up to two weeks of accumulated sick leave to attend to a serious health condition of a son or daughter, spouse or parent of the employee, or for the birth or adoption of a son or daughter of the employee. For purposes of this subsection, 'sick leave' means an absence from work for which compensation is provided through an employer's bona fide written policy providing compensation for loss of wages occasioned by illness, but does not include absences from work for which compensation is provided through an employer's plan, including, but not limited to, a short or long-term disability plan, whether or not such plan is self-insured.

"(2) Any employee aggrieved by a violation of this subsection may file a complaint with the Labor Commissioner alleging violation of the provisions of this subsection. Upon receipt of any such complaint, the commissioner shall hold a hearing. After the hearing, the commissioner shall send each party a written copy of the commissioner's decision. The commissioner may award the employee all appropriate relief, including rehiring or reinstatement to the employee's previous job, payment of back wages and reestablishment of employee benefits to which the employee otherwise

would have been eligible if a violation of this subsection had not occurred. Any party aggrieved by the decision of the commissioner may appeal the decision to the Superior Court in accordance with the provisions of [UAPA].

"(3) The rights and remedies specified in this subsection are cumulative and nonexclusive and are in addition to any other rights or remedies afforded by contract or under other provisions of law."

We first turn to the language of the statute, which does not define the word "accumulated." The plaintiff observes that the dictionary definition of "accumulate" is "a gradual piling up or increasing so as to make a store or great quantity . . . ." Webster's Third New International Dictionary. The plaintiff thus contends that "accumulated sick leave" refers to sick leave that has been carried over from one year to another or gradually acquired on a monthly basis. In contrast, the commissioner contends that "accumulated sick leave" means "a progressive increase in available paid sick leave which is tied to the employee's seniority." (Internal quotation marks omitted.) We conclude that, although both interpretations are plausible, only that of the commissioner is compatible with the broader statutory scheme.

As we repeatedly have stated, "the legislature is always presumed to have created a harmonious and consistent body of law . . . ." (Internal quotation marks omitted.) *Renaissance Management Co.* v. *Connecticut Housing Finance Authority*, 281 Conn. 227, 238, 915 A.2d 290 (2007). This requires the court "to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . In applying these principles, we are mindful that the legis-

lature is presumed to have intended a just and rational result." (Internal quotation marks omitted.) *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 748, 865 A.2d 428 (2005); cf. General Statutes § 1-2z. "When more than one construction [of a statute] is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results." (Internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 653, 894 A.2d 285 (2006).

In the present case, we examine General Statutes § 31-51*ll* (e) (2) (B) to assist in construing the word "accumulated" in § 31-51pp (c) (1). The former statute grants an eligible employee the right to elect, and an employer the right to require the employee, "to substitute any of the *accrued paid . . . sick leave* of the employee" for any part of the family medical leave to which the employee is entitled under that provision, including leave to care for a child, spouse or parent with a serious health condition. (Emphasis added.) General Statutes § 31-51*ll* (e) (2) (B).[7] Although §§ 31-51*ll* (e)

---

[7] General Statutes § 31-51*ll* (e) (2) (B) provides: "An eligible employee may elect, or an employer may require the employee, to substitute any of the *accrued* paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided under subparagraph (C), (D) or (E) of subdivision (2) of subsection (a) of this section for any part of the sixteen-week period of such leave under said subsection, except that nothing in section 5-248a or sections 31-51kk to 31-51qq, inclusive, shall require an employer to provide paid sick leave or paid medical leave in any situation in which such employer would not normally provide any such paid leave." (Emphasis added.)

General Statutes § 31-51*ll* (a) (2) provides: "Leave under this subsection may be taken for one or more of the following reasons:

"(A) Upon the birth of a son or daughter of the employee;

"(B) Upon the placement of a son or daughter with the employee for adoption or foster care;

"(C) In order to care for the spouse, or a son, daughter or parent of the employee, if such spouse, son, daughter or parent has a serious health condition;

"(D) Because of a serious health condition of the employee; or

"(E) In order to serve as an organ or bone marrow donor."

(2) (B) and 31-51pp (c) (1) are distinguishable in certain other respects,[8] both statutes permit employees to substitute paid sick leave for family medical leave purposes. It is therefore reasonable to seek interpretive guidance from § 31-51*ll* (e) (2) (B) because the "accumulated sick leave" to which § 31-51pp (c) (1) refers

[8] For example, § 31-51*ll* (e) (2) (B) does not apply in situations in which the employer's plan normally would not allow an employee to use paid sick leave for the family medical leave purposes described in that statute; see General Statutes § 31-51*ll* (e) (2) (B) ("nothing in section 5-248a or sections 31-51kk to 31-51qq, inclusive, shall require an employer to provide paid sick leave or paid medical leave in any situation in which such employer would not normally provide any such paid leave"); whereas § 31-51pp (c) (1) applies to *all* otherwise qualified employees, including those who receive benefits under § 31-51*ll* (e) (2) (B) *and* those who fall within the exclusionary provision of § 31-51*ll* (e) (2) (B). See General Statutes § 31-51pp (c) (1) ("[i]t shall be a violation of sections 31-51kk to 31-51qq, inclusive, for *any* employer to deny an employee the right to use up to two weeks of accumulated sick leave or to discharge, threaten to discharge, demote, suspend or in any manner discriminate against an employee for using, or attempting to exercise the right to use, up to two weeks of accumulated sick leave to attend to a serious health condition of a son or daughter, spouse or parent of the employee" [emphasis added]). The purposes for which paid sick leave may be used under the two statutes also differ in certain respects. Section 31-51*ll* (e) (2) (B) permits such leave to be used for the care of the employee's child, spouse or parent with a serious health condition, for the employee's own serious health condition or for the purpose of serving as an organ or bone marrow donor. Section 31-51pp (c) (1), on the other hand, permits an employee to use at least two weeks of paid sick leave for the birth or adoption of the employee's child, as well as for the care of the employee's child, spouse or parent with a serious health condition.

On the issue of enforcement, General Statutes § 31-51pp (c) (1) provides that "[i]t shall be a violation of sections 31-51kk to 31-51qq, inclusive, for any employer to deny an employee the right to use up to two weeks of accumulated sick leave or to discharge, threaten to discharge, demote, suspend or in any manner discriminate against an employee for using, or attempting to exercise the right to use, up to two weeks of accumulated sick leave" for the designated purposes. Although the enforcement provision in § 31-51pp (c) (2) is available only to employees aggrieved by violations of subsection (c), employees whose employers allow them to use paid sick leave to care for a child, parent or spouse under § 31-51*ll* (e) (2) (B) may enforce the right to do so for at least two weeks under § 31-51pp (c) because of the express language in subsection (c) (1), which refers to violations of §§ 31-51kk to 31-51qq, inclusive.

appears to be the same type of sick leave that may be substituted for family medical leave under § 31-51*ll* (e) (2) (B).

Turning to the statutory language, we note that § 31-51*ll* (e) (2) (B) uses the word "accrued," rather than "accumulated," in the title of the statute[9] and in referring to the substitution of paid sick leave for unpaid leave. The words "accrued" and "earned," rather than "accumulated," also are used in the corresponding regulations.[10] See General Statutes § 31-51qq ("the Labor Commissioner shall adopt regulations . . . to establish procedures and guidelines necessary to implement the [family and medical leave law]"). Regulations adopted

---

[9] General Statutes § 31-51*ll* is entitled: "Family and medical leave: Length of leave; eligibility; intermittent or reduced leave schedules; substitution of *accrued* paid leave; notice to employer." (Emphasis added.)

[10] Section 31-51qq-18 of the Regulations of Connecticut State Agencies provides in relevant part: "(a) Generally, [family and medical leave law (FMLA)] leave is unpaid. However, under the circumstances described in this section, FMLA permits an eligible employee to choose to substitute paid leave for FMLA leave. If the employee does not choose to substitute *accrued* paid leave for FMLA leave, the employer may require the employee to substitute *accrued* paid leave for FMLA leave.

\* \* \*

"(c) Substitution of paid *accrued* vacation, personal or medical/*sick leave* may be made for any unpaid leave needed to care for a family member, or the employee's own serious health condition. Substitution of medical/sick leave may be elected to the extent the circumstances meet the employer's usual requirements for the use of medical/sick leave. An employer is not required to allow substitution of paid sick or medical leave for unpaid FMLA leave 'in any situation' where the employer's uniform policy would not normally allow such paid leave. An employee, therefore, has a right to substitute paid medical/sick leave to care for a seriously ill family member only if the employer's leave plan allows paid leave to be used for that purpose. Similarly, an employee does not have the right to substitute paid medical/sick leave for a serious health condition which is not covered by the employer's leave plan.

\* \* \*

"(g) If neither the employee nor the employer elects to substitute paid leave for unpaid FMLA leave under the above conditions and circumstances, the employee shall remain entitled to all the paid leave which is *earned or accrued* under the terms of the employer's plan. . . ." (Emphasis added.)

pursuant to a legislative directive have the force of law. See, e.g., *Dixon* v. *Empire Mutual Ins. Co.*, 189 Conn. 449, 452 n.5, 456 A.2d 335 (1983). We thus examine the meaning of "accrued" and "earned" to determine whether they may be distinguished in any meaningful way from "accumulated," as that term is used in § 31-51pp (c) (1).

Neither "accrued" nor "earned" is defined in § 31-51*ll* or in the applicable regulations. Under the rules of statutory construction, however, "words and phrases shall be construed according to the commonly approved usage of the language . . . ." General Statutes § 1-1 (a). "If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Historic District Commission* v. *Hall*, 282 Conn. 672, 679–80, 923 A.2d 726 (2007). The definition of "accrue" in Webster's Third New International Dictionary is "to come into existence as an enforceable claim: vest as a right," "to come by way of increase or addition," or "to be periodically accumulated . . . ." The definition of "earn" is "to receive as equitable return for work done or services rendered: have accredited to one as remuneration," or "to come to be duly worthy of or entitled to as remuneration for work or services . . . ." Id.

The plaintiff's policy of providing employees with progressive annual increases in paid sick leave on the basis of seniority for work performed during the preceding year satisfies both definitions. Thus, an interpretation of the term "accumulated sick leave" in § 31-51pp (c) (1) that includes employees whose policies do not permit them to carry over sick leave to the following year is the most workable construction of the statute because it is the most consistent with § 31-51*ll* (e) (2) (B). In other words, use of the word "accrued" in § 31-51*ll* (e) (2) (B) applies to all employees covered by the

statute, including those who are allowed to carry over "accrued" sick leave from year to year and those who may not, but who, at any point in time, have "accrued" sick leave available to them.

The plaintiff nonetheless argues that only employees whose benefit plans allow them to carry over sick leave should be permitted to use paid sick leave for the designated purposes because only those employees have "accumulated sick leave" under § 31-51pp (c) (1). We disagree. It simply makes no sense to treat employees who are not able to carry over sick leave from one year to another in a different manner from those who are permitted to do so under the plans adopted by their employers. Furthermore, by attributing different meanings to the word "accumulated" in § 31-51pp (c) (1) and the word "accrued" in § 31-51*ll* (e) (2) (B), the legislature would be granting rights to certain employees in one part of the statutory scheme that they would not be allowed to enforce in other parts of the same statutory scheme.[11] We therefore conclude that the legislature used the words "accumulated," "accrued" and "earned" interchangeably in the relevant provisions. Such a construction of § 31-51pp (c) (1) also is in accord with the remedial purpose of the family and medical leave law. See, e.g., *Misenti* v. *International Silver Co.*, 215 Conn. 206, 210, 575 A.2d 690 (1990) (remedial statute should not be construed to "impose limitations on the benefits provided . . . that the statute itself does not clearly specify"). In addition, there is no limiting language in the statutory scheme indicating that the legislature intended for employees to be treated differently depending on whether they are able to carry over unused sick leave from one year to another. We there-

---

[11] For example, employees who exercise their right to substitute two weeks of "accrued" sick leave under § 31-51*ll* (e) (2) (B) to care for a child, spouse or parent would be unable to enforce that right under § 31-51pp (c). See footnote 8 of this opinion.

fore conclude that the term "accumulated sick leave" in § 31-51pp (c) (1) includes the type of paid sick leave described in the collective bargaining agreement at issue in this appeal.

To the extent that any ambiguity remains, the legislative history of § 31-51pp (c) contains no indication that "accumulated sick leave" was intended to exclude sick leave that may not be carried over from one year to another. Contrary to the plaintiff's claim, the legislative history does not suggest that the legislature specifically chose to use the word "accumulated" to limit application of the statute. The only significant restriction discussed during the committee hearings on the legislation was an amendment limiting an employer's obligation to accept the substitution of unused paid sick leave to two weeks because of the provision's potential economic effect on individual businesses if employees with large amounts of unused leave were permitted to substitute all of their accrued sick leave for family medical leave purposes. See Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 2, 2003 Sess., pp. 614–16, remarks of Representatives Richard O. Belden and Lenny T. Winkler. Furthermore, sick leave was variously described during the committee hearing as time that employees "currently have"; id., p. 615, remarks of Representative Winkler; "that bank of money"; id., p. 620, remarks of Representative Linda A. Orange; "accrued sick time"; id., 638, remarks of Leslie J. Brett, executive director of the permanent commission on the status of women; id., p. 643, remarks of Robert Katz; and "time banked . . . ." Id., p. 642, remarks of Robert Katz. No suggestion was made that the provision should be applied only to policies under which sick leave could be carried over to the following year or that the word "accumulated" was selected to limit the use of such leave to a certain group of employees.

Legislative debate in the General Assembly followed a similar pattern. In the House of Representatives, different legislators described sick leave as "accumulated"; 46 H.R. Proc., Pt. 16, 2003 Sess., p. 5426, remarks of Representative Kevin Ryan; "accrued"; id., p. 5428, remarks of Representative Winkler; and "earned . . . ." Id., p. 5431, remarks of Representative Brian J. Flaherty. In the Senate, one legislator explained that the provision was "geared to those companies and those employees [who] have accumulated their sick time, *have not used it.*" (Emphasis added.) 46 S. Proc., Pt. 13, 2003 Sess., p. 4001, remarks of Senator Edith B. Prague. Furthermore, the focus of the committee hearing and the legislative debates was not on the language of the statute but on the larger issue of whether and how family and medical leave should or could be made available to a greater number of people so as to ease the financial burden on family members who might be required to take time away from work to care for other family members. The legislature thus appears to have broadly understood the term "accumulated sick leave" as referring to paid sick leave that had been earned by an employee but not yet used.

The plaintiff claims that such an interpretation constructively eliminates the word "accumulated" from the statute in violation of well established principles of statutory construction. The plaintiff argues that if the legislature had intended the family and medical leave law to apply to all types of sick leave, it could have used the word "available" instead of "accumulated," or chosen not to add any limiting term at all. We disagree.

It is a "basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) *Small*

v. *Going Forward, Inc.*, 281 Conn. 417, 424, 915 A.2d 298 (2007). One obvious purpose of using the word "accumulated" in § 31-51pp (c) (1) is to distinguish sick leave credited on the basis of work performed in the past from sick leave that may be obtained from sick leave banks for work to be performed in the future. In the absence of any limiting term, this distinction would not be absolutely clear. Use of the word "available" would create a similar ambiguity because it also fails to distinguish between past and future sick leave. Only terms such as "accrued," "earned" and "accumulated" refer to sick leave that has been credited to an employee on the basis of work performed in the past. Accordingly, far from reading the word "accumulated" out of the statute, the present interpretation is consistent with the statute's purpose of prohibiting employers from denying employees the right to use up to two weeks of paid sick leave earned on the basis of their past work for family and medical leave purposes.

The judgment is affirmed.

In this opinion NORCOTT, PALMER and VERTE-FEUILLE, Js., concurred.

KATZ, J., concurring. The majority concludes that an employee's right, as provided under General Statutes § 31-51pp (c) (1),[1] to use "up to two weeks of *accumu-*

---

[1] General Statutes § 31-51pp (c) provides: "(1) *It shall be a violation of sections 31-51kk to 31-51qq, inclusive, for any employer to deny an employee the right to use up to two weeks of accumulated sick leave or to discharge, threaten to discharge, demote, suspend or in any manner discriminate against an employee for using, or attempting to exercise the right to use, up to two weeks of accumulated sick leave to attend to a serious health condition of a son or daughter, spouse or parent of the employee, or for the birth or adoption of a son or daughter of the employee.* For purposes of this subsection, 'sick leave' means an absence from work for which compensation is provided through an employer's bona fide written policy providing compensation for loss of wages occasioned by illness, but does not include absences from work for which compensation is provided through an employer's plan, including, but not limited to, a short or long-term disability plan, whether or not such plan is self-insured.

*lated* sick leave"; (emphasis added); to care for a family member permits an employee to draw on sick time that the employee has *earned*. The majority therefore rejects the construction of the plaintiff, Southern New England Telephone Company, that "accumulated" means that employees are entitled to this benefit only if the employee's sick leave carries over from one period to another. I agree with the majority's conclusion. I disagree, however, with the essential reasoning of that conclusion.

The majority begins its analysis with General Statutes § 31-51*ll* (e) (2) (B),[2] another provision of our state

"(2) Any employee aggrieved by a violation of this subsection may file a complaint with the Labor Commissioner alleging violation of the provisions of this subsection. Upon receipt of any such complaint, the commissioner shall hold a hearing. After the hearing, the commissioner shall send each party a written copy of the commissioner's decision. The commissioner may award the employee all appropriate relief, including rehiring or reinstatement to the employee's previous job, payment of back wages and reestablishment of employee benefits to which the employee otherwise would have been eligible if a violation of this subsection had not occurred. Any party aggrieved by the decision of the commissioner may appeal the decision to the Superior Court in accordance with the provisions of chapter 54.

"(3) The rights and remedies specified in this subsection are cumulative and nonexclusive and are in addition to any other rights or remedies afforded by contract or under other provisions of law." (Emphasis added.)

[2] General Statutes § 31-51*ll* (e) provides: "(1) If an employer provides paid leave for fewer than sixteen workweeks, the additional weeks of leave necessary to attain the sixteen workweeks of leave required under sections 5-248a and 31-51kk to 31-51qq, inclusive, may be provided without compensation.

"(2) (A) An eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave or family leave of the employee for leave provided under subparagraph (A), (B) or (C) of subdivision (2) of subsection (a) of this section for any part of this sixteen-week period of such leave under said subsection.

"(B) An eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided under subparagraph (C), (D) or (E) of subdivision (2) of subsection (a) of this section for any part of the sixteen-week period of such leave under said subsection, except that nothing in section 5-248a or sections 31-51kk to 31-51qq, inclusive, shall require an employer to provide paid sick leave or paid medical leave in any situation in which such employer would not normally provide any such paid leave."

family and medical leave law (leave law); General Statutes §§ 31-51kk through 31-51qq; that permits an employee to elect, or an employer to require, the substitution of certain types of paid leave that the employee has "accrued," including sick leave, for unpaid leave under the leave law.[3] The majority then reasons that, because § 31-51*ll* (e) (2) (B) provides a right to substitute sick leave for family medical leave similar to that provided under § 31-51pp (c) (1), it is reasonable to look to the meaning of "accrued" sick leave under § 31-51*ll* (e) for "interpretive guidance" in determining the meaning of "accumulated" sick leave under § 31-51pp (c). It ultimately concludes that the legislature used the terms "accumulated" and "accrued" interchangeably because such a construction is the most consistent manner in which to read the statutes. The majority therefore declines to adopt the narrower term of "accumulated," and instead reads § 31-51pp (c) (1) as if it stated "accrued" or "earned." I cannot agree with this analytical construct.

Typically, we assume that the legislature has a different intent when it uses different terms in the same statutory scheme. See *Arminio* v. *Butler*, 183 Conn. 211, 219, 440 A.2d 757 (1981); see also *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 609, 830 A.2d 164 (2003). Thus, we would begin with the presumption that the legislature intended for "accrued" sick leave in § 31-51*ll* (e) (2) (B) to have a different meaning than "accumulated sick leave" in § 31-51pp (c) (1). We ultimately could conclude otherwise if the terms in fact shared a common meaning, or there was clear

---

[3] The majority notes that the title of § 31-51*ll* also uses the word "accrued" in referring to sick leave. Although I would agree that the legislature actually meant what it said when it used the term "accrued" in the text of the statute, as we recently have made clear, titles to statutes are not a proper source for statutory interpretation. See *Small* v. *Going Forward, Inc.*, 281 Conn. 417, 425–26 n.5, 915 A.2d 298 (2007); *Clark* v. *Commissioner of Correction*, 281 Conn. 380, 389 n.14, 917 A.2d 1 (2007).

evidence that, despite having used different terms, the legislature nonetheless had intended to use essentially the same term. One way in which that intent might be gleaned is if analysis and application were to demonstrate that the statutory scheme would be unworkable or irrational if we were to give the words their common meaning. The majority avoids this presumptive rule of construction and analytical process by simply stating that the scheme would be more consistent if we construe the two terms as one. Because I find this reasoning unpersuasive and disagree with the majority's approach to construing the statute, I write separately.

I begin with the text of § 31-51pp (c) (1). Because the term "accumulated" is not defined, we turn to its common meaning. See General Statutes § 1-1 (a). "Accumulate" is defined as "to heap up in a mass: pile up" or "to grow or increase in quantity or number . . . ." Webster's Third New International Dictionary. Applying this definition, the "two weeks of accumulated sick leave" provided for in § 31-51pp (c) (1) could mean sick leave that increases on any basis—from day-to-day, week-to-week, month-to-month or year-to-year.[4]

---

[4] There are examples of these various uses in the General Statutes. See, e.g., General Statutes § 7-169 (i) (3) ("the holder of a Class A permit [allowing bingo games one day a week] may offer two additional prizes on a weekly basis not to exceed one hundred twenty-five dollars each as a special grand prize and in the event such a special grand prize is not won, the money reserved for such prize shall be added to the money reserved for the next week's special grand prize, provided no such special grand prize may accumulate for more than sixteen weeks or exceed a total of two thousand dollars"); General Statutes § 10-156 ("[u]nused sick leave [of professional employees certified by state board of education] shall be accumulated from year to year, as long as the employee remains continuously in the service of the same board of education"); General Statutes § 10-183e (a) ("A member [of the Teachers' Retirement Association] shall receive a month of credited service for each month of service as a teacher, provided the Teachers' Retirement Board may grant a member a month of credited service for a month during which such member was employed after the first school day . . . of such month . . . . Ten months of credited service shall be equal to one year of credited service. A member may not accumulate more than one year of credited service during any school year.").

Indeed, the legislature has used the term "accumulate" even to refer to the combining of intermittent periods of time. See General Statutes § 5-213 (c) ("[p]art-time, seasonal or intermittent state service shall be credited as state service for the purposes of this section when such part-time, seasonal or intermittent service, accumulated, totals the calendar years herein above specified"). This use suggests that the legislature does not use the term "accumulated" to mean only a consistent, progressive increase or an automatic rolling over of benefits from period to period. Thus, without further qualifying terms to limit its scope, the term "accumulated sick leave" includes sick leave that increases in any manner.

The commonsense question raised by the plaintiff's construction, however, is why the legislature would have intended to provide this benefit to *every* group of employees other than those who happen to receive their sick leave in a lump sum that cannot be carried forward into a new benefits period. For example, consider three employees, each of whom has twelve days of employer paid sick leave available to use as of December 1 of a given year: A, who received twelve days of sick leave on January 1, but who loses any days unused at year's end; B, who received one day of sick leave per month, carried over from month-to-month, but who loses any sick leave unused at year's end; and C, who received six days of sick leave per year for two years that carried over from year one to year two. Under the plaintiff's construction of the term "accumulated," B and C each would be entitled to use their sick leave for family leave under § 31-51pp (c) (1), because their sick leave increased gradually, either from month-to-month or year-to-year. A, however, would not be entitled to use his sick leave for family leave under § 31-51pp (c) (1), solely because he received his sick days in one lump

sum that could not be carried over into the following year.

If there is a rational reason for making such a distinction, it is not evident from the statutory scheme. Although the leave law imposes temporal limitations on when an employee becomes eligible for leave; see General Statutes §§ 31-51kk (1) and 31-51*ll* (a) (1); once the requisite period and hours of employment have been satisfied, the leave law imposes no further preconditions to eligibility on the basis of the manner in which an employee receives employer benefits. Indeed, the leave law defines employee benefits to mean "all benefits provided or made available to employees by an employer . . . ." General Statutes § 31-51kk (5).

The purpose and history of § 31-51pp (c) demonstrate that the legislature did not intend to exclude this limited class of employees solely by its use of the term "accumulated." To put this issue in context, I begin with the state of the law at the time the legislature was considering the bill that thereafter became § 31-51pp (c). As the majority properly recognizes, the sixteen weeks of family and medical leave provided for under the leave law generally is unpaid. See General Statutes § 31-51*ll* (d); Regs., Conn. State Agencies § 31-51qq-18 (a). Section 31-51*ll* (e) (2) (B), however, allows a substitution of "accrued" paid leave under specified circumstances for any part of the sixteen weeks of leave. An employee may "elect" that substitution to ameliorate the financial hardship that unpaid leave would impose, or an employer may "require" that substitution to avoid an employee's absence from work for both the sixteen weeks of unpaid leave under the leave law and company paid accrued leave. General Statutes § 31-51*ll* (e) (2) (B).

Significantly, however, that section of the leave law imposes a specific limitation on the substitution of

accrued sick or medical leave, but not on other types of leave, providing: "An eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided under subparagraph (C), (D) or (E) of subdivision (2) of subsection (a) of this section for any part of the sixteen-week period of such leave under said subsection, *except that nothing in section 5-248a [leaves of absence for state employees] or sections 31-51kk to 31-51qq, inclusive, shall require an employer to provide paid sick leave or paid medical leave in any situation in which such employer would not normally provide any such paid leave.*" (Emphasis added.) General Statutes § 31-51*ll* (e) (2) (B). The regulations clearly explain that this "in any situation" exception in § 31-51*ll* (e) (2) (B) limits the right to substitute employer paid sick leave to only those situations in which the employer's benefit plan allows sick leave to be used for the purpose for which leave is sought. See Regs., Conn. State Agencies § 31-51qq-18 (c).[5] For example, an employee could

___

[5] Section 31-51qq-18 of the Regulations of Connecticut State Agencies, entitled "Is [the leave law] leave paid or unpaid?," provides in relevant part: "(a) Generally, [the leave law] leave is unpaid. However, under the circumstances described in this section, [the leave law] permits an eligible employee to choose to substitute paid leave for [the leave law] leave. If the employee does not choose to substitute accrued paid leave for [the leave law] leave, the employer may require the employee to substitute accrued paid leave for [the leave law] leave.

"(b) Where an employee has earned or accrued paid vacation, personal or family leave, that paid leave may be substituted for all or part of any unpaid [leave law] leave relating to birth, placement of a child for adoption or foster care, or care for a spouse, child, parent of the employee or parent of the employee's spouse who has a serious health condition. The term 'family leave' as used in [the leave law] refers to paid leave provided by the employer covering the particular circumstances for which the employee seeks leave for either the birth of a child and to care for such child, placement of a child for adoption or foster care, or care for a spouse, child, parent of the employee or parent of the employee's spouse with a serious health condition.

"(1) For example, if the employer's leave plan allows use of family leave to care for a child but not for a parent, the employer is not required to allow accrued family leave to be substituted for [leave law] leave used to care for a parent.

not substitute company paid sick leave to care for a child with a serious health condition, a permissible purpose for unpaid leave under the leave law, if the employer's plan permitted the employee to use sick leave only for the employee's own illness, and not for family medical leave. See id.

Thus, the benefit of the substitution provision as it applied to sick leave under § 31-51*ll* (e) (2) (B) was rather illusory from the employees' perspective—they were entitled to no more than the right to use paid sick leave benefits to which they already were entitled under their employment agreement. The only evident benefit to employees was that, should their employer interfere with their use of company sick leave for a purpose permitted both under the leave law and the employer's plan, they could invoke the enforcement mechanisms provided under the leave law. See General Statutes § 31-51pp (a) and (b);[6] see also Regs., Conn. State Agencies

"(c) Substitution of paid accrued vacation, personal or medical/sick leave may be made for any unpaid leave needed to care for a family member, or the employee's own serious health condition. Substitution of medical/sick leave may be elected to the extent the circumstances meet the employer's usual requirements for the use of medical/sick leave. An employer is not required to allow substitution of paid sick or medical leave for unpaid [leave law] leave 'in any situation' where the employer's uniform policy would not normally allow such paid leave. An employee, therefore, has a right to substitute paid medical/sick leave to care for a seriously ill family member only if the employer's leave plan allows paid leave to be used for that purpose. Similarly, an employee does not have the right to substitute paid medical/sick leave for a serious health condition which is not covered by the employer's leave plan. . . ."

[6] General Statutes § 31-51pp provides in relevant part: "(a) (1) It shall be a violation of sections 5-248a and 31-51kk to 31-51qq, inclusive, for any employer to interfere with, restrain or deny the exercise of, or the attempt to exercise, any right provided under said sections.

"(2) It shall be a violation of sections 5-248a and 31-51kk to 31-51qq, inclusive, for any employer to discharge or cause to be discharged, or in any other manner discriminate, against any individual for opposing any practice made unlawful by said sections or because such employee has exercised the rights afforded to such employee under said sections.

"(b) It shall be a violation of sections 5-248a and 31-51kk to 31-51qq, inclusive, for any person to discharge or cause to be discharged, or in any other manner discriminate, against any individual because such individual:

§ 31-51qq-25 (delineating enforcement protections under leave law); Regs., Conn. State Agencies § 31-51qq-47 (stating types of redress commissioner of labor may order for violations of leave law). Thus, in many family medical situations, employees often either could not substitute their accrued sick leave or had insufficient paid leave that could be used for that purpose. Indeed, between 1993, the year the federal Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., was enacted, and 2000, two thirds of the 24 million workers who had taken unpaid leave under the federal act to care for new children or family members could not afford the leave, and of these approximately 16 million workers, one tenth were forced onto welfare. See Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 2, 2003 Sess., p. 673, written statement of Beverley Brakeman, executive director of the Connecticut Chapter of the National Organization for Women (citing study conducted by Family Leave Commission).

In 2003, the joint committee on labor and public employees (committee) considered several bills that would have allowed employees to take paid leave, rather than unpaid leave, and to expand the circumstances under which leave could be taken under the leave law. See Proposed Senate Bill Nos. 26 and 933; Proposed House Bill Nos. 5119, 5537, 5890, 6151 and 6448. Representative Lenny T. Winkler introduced Proposed House Bill No. 6151, entitled "An Act Concerning the Use of Sick Time for Family Leave," which was enacted, after further amendments, as § 31-51pp (c).

"(1) Has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to sections 5-248a and 31-51kk to 31-51qq, inclusive;

"(2) Has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under said sections; or

"(3) Has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under said sections. . . ."

The stated purpose of the bill was "[t]o require businesses to authorize the use of sick time for family leave."[7] Proposed House Bill No. 6151. The bill as originally drafted proposed to add this provision to § 31-51*ll* and set no limit on the amount or type of sick leave that could be used. It provided that "no employer may deny an employee the right to use sick leave to attend to an illness of a child, spouse or parent of the employee, or for the birth or adoption of a child of the employee," it barred an employer from interfering with that right, and it provided administrative and civil remedies to enforce that right. Proposed House Bill No. 6151. Thus, as originally presented to the committee, the bill would have permitted employees who had little or no paid sick leave that could be used for family leave to use whatever paid sick leave they had for that purpose. See Conn. Joint Standing Committee Hearings, supra, p. 642, remarks of Robert Katz (testifying that he supported bill because his wife suffers from chronic debilitating condition, then current law did not allow him to use accrued sick leave for family leave, his collective bargaining agreement provided only five family sick days and, although he is allowed under current law to use accrued vacation time for family leave, his vacation leave is limited).

During public hearings on the original version of Proposed House Bill No. 6151, Representative Winkler

---

[7] Proposed House Bill No. 6151 provides: "That section 31-51*ll* of the general statutes be amended to provide that no employer may deny an employee the right to use sick leave to attend to an illness of a child, spouse or parent of the employee, or for the birth or adoption of a child of the employee. No employer may discharge, threaten to discharge, demote, suspend, or in any manner discriminate against an employee for using or attempting to exercise the right to use sick leave to attend to an illness of a child, spouse or parent of the employee, or the birth or adoption of a child of the employee. Any employee aggrieved by a violation of this section may file a complaint with the Labor Commissioner, or may bring a civil action for judicial enforcement of the requirements of this section."

explained that this bill would serve the dual purpose of providing employees with paid family medical leave and helping businesses curb employees' abuse of sick leave.[8] Id., p. 613. Representative Richard O. Belden asked Representative Winkler to clarify a comment that he had made suggesting that there might be a limit to the amount of sick leave that could be used. Representative Belden noted that employers would not be happy with a system under which employees who had earned extraordinarily large amounts of sick leave due to seniority could use their entire leave to care for a family member.[9] Id., p. 614. An exchange ensued in which Representative Winkler indicated that he would support a limit of between two and four weeks. Significantly, Representative Winkler noted: "I'm not advocating that we give . . . people more sick time, just another way

[8] Because the public hearings on the Proposed House Bill No. 6151 took place before the committee redrafted the bill to include the term "accumulated," I, unlike the majority, would not rely on testimony at those hearings using various other descriptive terms as evidence of the meaning that legislators or others specifically ascribed to the term "accumulated."

[9] Representative Belden cited as an example a situation based on his prior sick leave plan when he worked in the private sector. Notably, the plan appears to have provided sick leave to employees in the same graduated seniority based method as the plaintiff provides to its employees, albeit considerably more generously. He inquired of Representative Winkler: "[I]s it your intention to possibly indicate that some portion of the sick leave could be used? Because I know . . . before I retired, at United Technologies [Corporation], that their sick leave policy was that I could, after [thirty] some years of service, and it grew as you had time, my sick leave was probably about 200 and some work days. And their policy is if I took 200 work days this year sick, at January [1] if I had been back to work for one day I had 200 more sick days. So that's why I'm asking if there would be some type of limitation on how much sick time because, otherwise, for that employer that would be a nightmare, I'm sure. . . . [A]n employer with a sick leave policy like that could have somebody out a 150—without some limitation on how much sick leave could be accounted for and one of these absences that a person could be out, say, adopting a child—say I've got to stay home for the next three years. So, I'll just come in to work on December [23] and then in January I'm eligible for another 200 days of sick leave . . . ." Conn. Joint Standing Committee Hearings, supra, p. 614, remarks of Representative Belden.

of using what they *currently* have." (Emphasis added.) Id., p. 615. No comments were made during the hearings to suggest that a limitation should be imposed on the basis of how employers conferred sick time.

Thereafter, the bill was redrafted by the committee and presented in its revised form to the General Assembly.[10] See Committee Bill No. 6151. Among the changes made to the original bill was the placement of the new provision in § 31-51pp, rather than in § 31-51*ll*, and the modification of the term "sick leave" to provide for "accumulated sick leave." In light of Representative Winkler's comment clarifying that he had not intended

---

[10] Committee Bill No. 6151 provides in relevant part: "Section 31-51pp of the general statutes is amended by adding subsection (c) as follows . . .

"(c) (1) It shall be a violation of sections 31-51kk to 31-51qq, inclusive, for any employer to deny an employee the right to use accumulated sick leave or discharge, threaten to discharge, demote, suspend or in any manner discriminate against an employee for using, or attempting to exercise the right to use, accumulated sick leave to attend to an illness of a son or daughter, spouse or parent of the employee, or for the birth or adoption of a son or daughter of the employee.

"(2) Any employee aggrieved by a violation of this subsection may file a complaint with the Labor Commissioner alleging violation of the provisions of this subsection. Upon receipt of any such complaint, the commissioner shall hold a hearing. After the hearing, the commissioner shall send each party a written copy of the commissioner's decision. The commissioner may award the employee all appropriate relief, including rehiring or reinstatement to the employee's previous job, payment of back wages and reestablishment of employee benefits to which the employee otherwise would have been eligible if a violation of this subsection had not occurred. Any employee who prevails in such a complaint shall be awarded reasonable attorney's fees and costs. Any party aggrieved by the decision of the commissioner may appeal the decision to the Superior Court in accordance with the provisions of chapter 54.

"(3) Alternatively, any employee aggrieved by a violation of this subsection may bring a civil action for judicial enforcement of the requirements of this subsection, in the superior court for the judicial district where the violation is alleged to have occurred. If the employee prevails, the court shall award reasonable attorney's fees and costs.

"(4) The rights and remedies specified in this subsection are cumulative and nonexclusive and are in addition to any other rights or remedies afforded by contract or under other provisions of law."

for the bill to require employers to provide additional sick leave to employees, but, rather, to allow employees to use what they currently had for family leave, it appears that the insertion of the word "accumulated" simply was intended to make that clarification. Indeed, as the majority correctly points out, the debates that followed in the House of Representatives and in the Senate do not indicate that any legislator expressed a concern about or support for *any* type of limitation on employees' rights to use sick time they had earned on the basis of how they earned it. In the absence of any indication in the statutory scheme or the history of § 31-51pp (c) that the legislature intended the word "accumulated" to do anything other than to clarify that it was not requiring employers to provide sick leave, and in light of the remedial purpose of the statute, I would not construe "accumulated" narrowly to exclude only that class of employees who receive sick leave in a lump sum. See *Small* v. *Going Forward, Inc.*, 281 Conn. 417, 424, 915 A.2d 298 (2007) (noting that ambiguous statute in remedial scheme must be interpreted liberally in favor of those whom legislature intended to benefit). I agree with the majority that "accumulated" sick leave simply means "earned" sick leave.

Accordingly, I respectfully concur.