MEMORANDUM OF DECISION
JANE W. FREEMAN, Judge.
The Petitioner, Tawanna Quidgeon, has filed a Petition For Recognition of Foreign Child Support Order and Withholding of Per Capita Distribution Benefits For Payment of Child Support Arrearages (“Petition”) pursuant to the Mohegan Tribal Code (“MTC”) § 3-1. The Court held a hearing on the Petition on January 23, 2009, at which both parties appeared.
An action for the dissolution of Petitioner’s marriage to the Respondent is pending [1] in the Superior Court for the Judicial District of New London at Norwich in the case of Tawanna Quidgeon v. Joe Quidgeon, No. FA 08-4109138 (“Dissolution Action”). On September 8, 2008, the Superi- or Court entered an order requiring the Respondent to pay the sum of $222.00 per week, as pendente lite child support for the three minor children (“PL Order”; Plaintiffs Ex. 1). The Petitioner requests this Court to recognize the PL Order as the law of the Mohegan Tribe, pursuant to MTC § 3-1.
In all of the previous petitions filed pursuant to MTC § 3-1, petitioners have sought recognition and enforcement of a final judgment ordering the payment of child support. In this case, however, Petitioner is seeking recognition and enforcement of a pendente lite order for the payment of child support. Thus the Court must decide, as an issue of first impression, whether under MTC § 3-1 it can recognize and enforce an order for pen-dente lite child support, entered by a court of competent jurisdiction.
The answer to the foregoing question presents an issue of statutory construction. There are two relevant sections in the Mohegan Tribe Code, MTC § 3-1 and MTC § 1-5. The former section provides in pertinent part, as follows:
*97 Sec. 3-1. Recognition and Enforcement of Valid Child Support Orders.
(a) The Mohegan Tribal Court shall recognize, as the law of The Mohegan Tribe, any valid child support order from any court of competent jurisdiction that has been entered against a Mohegan Tribal Member.
The latter section provides in pertinent part, as follows:
Sec. 1-5. Enforcement of Judgments; Recognition of Foreign Judgments.
(a) Except as may be limited by Mohegan Tribal law including but not limited to the Gaming Revenue Allocation Plan or applicable federal law, the Mohegan Court System shall have the power to fashion any legal or equitable remedy reasonably required to enforce judgments and decrees, including but not limited to attachments, garnishments and executions.
(b) The judgment, decree or order of a court of the United States or of any State, and the judgment, decree or order of another federally recognized tribe, may be enforced by the Mohegan Court System, except as may be limited by Mohegan Tribal law, including but not limited to the Gaming Revenue Allocation Plan, or an applicable federal law, and provided that such judgment, decree or order does not contravene the policy of the Mohegan Tribe, and does not interfere with the right and the ability of the Mohegan tribe to govern itself and to exercise its sovereign authority.
“The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature .... ” Southern New England Telephone Co. v. Cashman, 283 Conn. 644, 650, 931 A.2d 142 (2007) (quoting Friezo v. Friezo, 281 Conn. 166, 181-82, 914 A.2d 533 (2007)). In any case of statutory construction, the analysis begins with the language of the statute and if the statutory language provides a clear answer, it ends there. Harris Trust and Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 254, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000). “When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same matter.... ” Southern New England Telephone Co. v. Cashman, supra, 283 Conn. at 650-51, 931 A.2d 142 (quoting Friezo, supra, 281 Conn. at 181—82, 914 A.2d 533). In addition, “every word in a legislative enactment is presumed to have meaning,” Szczapa v. United Parcel Service, Inc., 56 Conn.App. 325, 329, 743 A.2d 622 (2000) (quoting Mingachos v. CBS, Inc., 196 Conn. 91, 98, 491 A.2d 368 (1985)), and “there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment.” Biasetti v. Stamford, 250 Conn. 65, 81, 735 A.2d 321 (1999) (citations and internal quotation marks omitted). Where more than one statute addresses a subject, it is presumed that the legislature intended them to be read together to create a harmonious body of law. Mayor v. Mayor, 17 Conn.App. 627, 633, 554 A,2d 1109 (1989) (citations omitted). Additionally, “[ajlthough it is recognized that headings or titles of legislation are not conclusive, they may, nonetheless, be valuable aids to construction and legislative intent.” In re Cameron C., 103 Conn.App. 746, 753, 930 A.2d 826 (2007).
Both MTC § 3-l(a) and MTC § 1-5 address the same general subject matter, i.e., the recognition and enforcement of orders of other courts of compe *98 tent jurisdiction. However, MTC § 3-1 (a) uses the phrase “child support orders”, while MTC § 1-5 uses the phrase “judgment, decree or order of a court.” MTC § 3—1 (a) is the more specific ordinance since it only addresses the child support arena, while MTC § 1-5 addresses all judgments, decrees or orders of another court. Generally, specific terms governing the same subject matter “will prevail over general language of the same or another statute which might otherwise prove controlling. ...” State v. State Employees’ Review Board, 239 Conn. 638, 653-54, 687 A.2d 134 (1997) (quoting Concerned Citizens of Sterling, Inc. v. Connecticut Siting Council, 215 Conn. 474, 482-83, 576 A.2d 510 (1990)). In this case, however, MTC § 1-5 was enacted by the Tribal Council several years after the enactment of MTC § 3—1(a).[2] “The General Assembly is always presumed to know all of the existing statutes and the effect that its action or non-action will have upon any of them.” Plourde v. Liburdi, 207 Conn. 412, 417, 540 A.2d 1054 (1988) (citations and internal quotations omitted).
When the Tribal Council enacted MTC § 1-5, it provided for the enforcement of judgments, decrees and orders. The term “judgment” has been defined as “[a] court’s final determination of the rights and obligations of the parties in a case. The term judgment includes an equitable decree and any order from which an appeal lies.” Black’s Law Dictionary (8th Ed.2004). Further, the title of MTC § 1-5 refers only to the “Enforcement of Judgments” and the “Recognition of Judgments”; it does not mention orders or decrees. The term “order” “generally embraces final decrees as well as interlocutory directions and commands.” Black’s Law Dictionary (8th Ed.2004). On the other hand, the term “decree” is defined as “a judicial decision in a court of equity, admiralty, divorce, or probate—similar to a judgment of a court of law” or as “[a] court’s final judgment.” Black’s Law Dictionary (8th Ed.2004).
The title of MTC § 1-5 is evidence of a legislative intent to recognize and enforce only final judgments, orders and decrees. In order to create a harmonious body of law, MTC § 3-1, which refers to the recognition and enforcement of child support orders, must be construed to mean only final orders for child support and not interlocutory (pendente lite) orders. Such a construction is also consistent with the generally recognized rule of international comity followed by American courts, that only valid and final judgments will be recognized. Pilkington Bros. P.L.C. v. AFG Industries Inc., 581 F.Supp. 1039, 1045 (D.Del.1984).
It is therefore held that under the provisions of MTC § 3-1, this Court may only recognize and enforce final orders of child support entered by courts of competent jurisdiction. Because the Petitioner has secured only the PL Order, there is no final order of child support which can be recognized and enforced by this Court. At such a time as the Petitioner secures a final order of child support in the Dissolution Action, and if there is a child support arrearage, she may re-file a petition under the provisions of MTC § 3-1.
For the foregoing reasons, the petition dated November 8, 2008, is hereby denied.

. The dissolution action was pending as of the hearing date in this Court on January 23, 2009.

. MTC § 1-5 was enacted on October 15, 2008 and MTC § 51(a) was enacted on April 7, 2004.